The Mayor and City Council of Baltimore *vs.* Hughes' Adm'r. *D.B.N.*—1829.

---

THE MAYOR & CITY COUNCIL OF BALTIMORE *vs.* HUGHES's Adm'r *D. B. N.*—*December,* 1829.

Under the 2d. sec. of the act of 1797, *ch.* 54, the power given to the *Mayor and City Council* of *Baltimore,* "to tax any particular part or district of the city, for paving the streets, lanes or alleys therein, *or for sinking wells or erecting pumps, which may appear for the benefit of such particular part or district,*" is not confined to any particular description of benefit—such as the ordinary benefit and advantage of paved streets. The preservation of the health of such particular part of the city, is a benefit within the meaning and scope of the act.

The Mayor and City Council of Baltimore *vs.* Hughes' Adm'r D. B. N.—1829.

The legality of laying such tax, does not depend upon whether the paving does, or does not in fact, benefit the particular district taxed, but upon the object, the motive of the corporation in causing the paving to be done.

In an ordinance providing for such paving, and the imposition of such a special tax, it is not necessary that it should be expressly stated to be for the benefit of the particular district; if nothing appears to the contrary, such an exercise of the special taxing power will be taken to have been in pursuance of the authority given by the charter.

But where an ordinance provides for the paving of a street, &c. in a particular district, and the imposition of a special tax for that purpose on such district, which paving *appears from the ordinance* to be for the general benefit of the city, and not for the benefit of the particular district, it is not in pursuance of the authority conferred by the charter, and is void.

So upon the construction of the 13*th sec.* of the ordinance of the 9*th March*, 1807, which declares "that if the *Commissioners of Health* shall, at any time report in writing to the *City Commissioners*, that a nuisance exists in any street, lane, or alley in the city of *Baltimore*, which will endanger the health thereof," &c. it was held that the word *thereof* does not relate to the city of *Baltimore*, so as to make it mean a nuisance which will endanger the city, but that it relates to any street, lane or alley, &c. and means a nuisance that will endanger the health of such street, &c. and the ordinance is clearly within the power conferred by the charter.

A corporation must act within the limits of its delegated authority, and cannot go beyond it, yet it ought not by construction to be made to mean what is not clearly expressed, but when its ordinances will admit of two constructions, they should receive that which is consistent with the power given, and not that which is in violation of it.

Where one board of commissioners, in the execution of their duties, were required to report in writing to another board of commissioners, who thereupon were to do certain acts; and these boards were subsequently united without any change being prescribed as to the mode of discharging the trusts formerly confided to each of them, the formality of a written report as above directed, was necessarily dispensed with.

Under the 13th section of the ordinance of the 9th March, 1807, the City Commissioners and Commissioners of Health, were required to form a positive and decided opinion that "a nuisance exists" in some "street, lane, or alley in the city of *Baltimore*, which will endanger the health thereof"—An entry in their books of their decision is not required. Certificates in their warrants, which they are directed to issue for the collection of the tax imposed to remove the nuisance, of the existence of the nuisances and of their characters would be sufficient; but where they say in each warrant that they conceive the street mentioned, to be in a state of nuisance, which might endanger the health of the city, thus referring to the health of the city generally, not to that of a particular part, it is not such an opinion

as the ordinance requires, and the tax imposed under it cannot be enforced.

It is not competent to prove by oral testimony, the existence of facts to be ascertained by public commissioners, preparatory to laying a tax, which such commissioners are required to certify in writing.

The action for money paid, laid out, and expended, must be founded upon a contract, express or implied.

No person can by a voluntary payment of the debt of another, without his authority, make himself a creditor of the person whose debt is thus paid.

If one is compelled, or is in a situation to be compelled to pay the debt of another, as in the case of a surety and does pay it, the law implies a promise on the part of him for whom the money is paid, on which an action may be sustained, for in such case it is not a voluntary, but a compulsory payment.

A tax imposed by a municipal corporation cannot be recovered on a count for money paid, laid out, and expended, although such corporation has paid the cost of the improvement for which the tax was created.

Nor can the cost of such improvement, or any part thereof, be recovered from a defendant, liable to pay tax therefor on a count for work and labor, where the ordinance under which the work was done, has not been properly pursued, so as to create a legal liability in the defendant.

APPEAL from *Harford* County Court.   This was an action of *Assumpsit*, originally brought in *Baltimore* County Court, but on suggestion, &c. of the defendant (the intestate of the appellee) was removed to *Harford* County Court.   After the cause was so removed, the death of the original defendant was suggested, and the present appellee was made defendant, as his administrator *de bonis non*.   The action was brought to recover the sum of $1880 35, alleged to be due to the plaintiffs (the appellants) for certain paving taxes assessed upon the property of the intestate, by virtue of the corporate powers vested in the plaintiffs by certain acts of Assembly.   The declaration contained *six* counts—four special counts, and two general counts. The *first* count was for a paving tax, on application, &c. imposed the 24th of April, 1809, on *Forrest street*, &c. amounting to $656.   The *second* count was for a paving tax *to remove a nuisance,* imposed the 20th of July, 1812, on *Barre street,* between *Light* and *Charles streets,* amounting to $728.28.   The *third* count was for a similar tax, imposed the 29th of July, 1812, on *Forrest street,* between *Lee* and *York streets,* amounting to $496 07.

The *fourth* count was for paving taxes generally, amounting to $1880 35, being the aggregate of the sums mentioned in the three first counts of the declaration. The *fifth* count was for money paid, laid out and expended; and the *sixth* count was for work and labor. The defendant pleaded *non assumpsit*, and issue was joined.

1. At the trial the plaintiffs gave in evidence an act of the General Assembly of this State, passed at November session, 1796, entitled, "an act to erect *Baltimore town*, in *Baltimore* County, into a city, and to incorporate the inhabitants thereof." (1796, *ch.* 68.) And also another act of the said General Assembly, passed at November session, 1797, entitled, "A supplement to the act, entitled, An act to erect *Baltimore town*, in *Baltimore* county, into a city, and to incorporate the inhabitants thereof." (1797, *ch.* 54.) They further gave in evidence an ordinance of the Mayor and City Council of *Baltimore*, entitled, "An ordinance to appoint city commissioners, and prescribing their duties," approved March the 9th, 1807. And also gave in evidence another ordinance, entitled, "An ordinance to unite the powers and duties of the city commissioners and commissioners of health," approved 22d day of March, 1807. They also gave in evidence, that during the year 1809, *Henry Stouffer, John Bankson, William C. Gouldsmith*, and *Samuel A. Gatchell*, were city commissioners, duly appointed and qualified, and that the said *John Bankson, William C. Gouldsmith*, and *Samuel H. Gatchell*, have been dead several years; and also gave in evidence, that *Edward Johnson* was in said year, the Mayor of the city of *Baltimore*, duly elected and qualified. That on the 13th of June, 1808, the following petition was presented to, and received by the said *Henry Stouffer, &c.* commissioners as aforesaid.

"The City Commissioners, Gentlemen—The subscribers, owners and occupiers of houses and lots situate on *Forrest street*, between the southernmost boundary line of the city and *York street*, are desirous to have the same paved as soon as possible." Signed by a number of petitioners, and among others the original defendant *Hughes*.

On the back of which said petition was thus endorsed: "No 1. Petition for paving *Forrest street.* Rec'd. 13th June, 1808. Ordered to be surveyed." They further gave in evidence the following entries made in the book containing the proceedings of the said commissioners, viz. *Baltimore,* 8 May, 1809. Commissioners met. Present, full board. Issued warrant for the paving of *Forrest street,* $1584 87, $1503 57, $3088 44." They further gave parol evidence, that upon said application the said commissioners decided to pave said street, and obtained the verbal assent of the mayor of said city to such pavement; they also offered parol evidence, that the signers of said application or petition, constituted a majority of the proprietors and tenants inhabiting on said street, between the limits so required to be paved; and that *Christopher Hughes,* one of the proprietors, was the same *Christopher Hughes* who signed said application or petition; and also gave in evidence the following warrants: "City of *Baltimore, sct.* The city commissioners having been requested by a majority of the proprietors of lots bounding on *Forrest,* between *York street* and the outlines of the city, and tenants inhabiting thereon, by their written application of the fifteenth day of June last, and having determined on the propriety of paving said street front of said lots, agreeably to their request, did cause to be made the following list of the names of the persons who are liable to pay the tax by law directed to be levied for paving the said street, it being the width of eighty two feet six inches." Here follows the names of sundry persons, and amongst others, *Christopher Hughes,* $656.

"City of *Baltimore,* to wit: By virtue of an ordinance, entitled, An ordinance directing the manner of collecting and appropriating the money levied for paving the streets, lanes and alleys, in the city of *Baltimore,* and also an ordinance, entitled, An ordinance for more equal assessing and levying the paving tax on the streets, lanes and alleys, in the city of *Baltimore,* we the subscribers, city commissioners, do hereby authorise and direct you to collect from the several persons whose names are hereto above annexed, the several sums of money opposite their respective names, being the street tax on *Forrest street,* between

*York street* and the outlines of the city.    That you will make col-
lection aforesaid, and pay the same to the register of the city,
agreeably to the directions of the ordinance aforesaid, and this
shall be your sufficient warrant therefor.    Given under our hands
and seals this 24th day of April one thousand eight hundred and
nine."    Signed and sealed by *Henry Stouffer, &c.* the city com-
missioners.    "8th May, 1809.    Approved *Edward Johnson.*    To
the Collector of the City of *Baltimore, Benjn. Fowler,* Esquire."
On the back of which said warrant was thus endorsed : "War-
rant for paving *Forrest street,* dated 8th May, 1809.    Entered."
They also gave in evidence that the said street then was, and
still is, a public street in said city, and that the city commission-
ers caused that part of the said street called *Forrest street,* be-
tween *York street,* and the outlines of the city, to be paved, and
that the proportion of the paving tax of the said *Christopher
Hughes* for paving said part, amounted to $656, and that he paid
on account thereof, when the paving was done, the sum of $500.
They then offered in evidence that *Henry Stouffer, &c.* were
city commissioners, and commissioners of health, in the city
aforesaid, in the year 1812, duly appointed and qualified as
such; that *Edward Johnson* was then and during the said year,
the mayor of said city, duly elected and qualified as such.    The
plaintiffs then gave in evidence the following entries made up-
on the books of the commissioners aforesaid, viz. "*Baltimore,*
29th June, 1812.    Commissioners met.    Present, full board.
*Barre,* between *Light* and *Charles streets,* and *Forrest,* between
*Lee* and *York streets,* declared by the board of health to be in a
state of nuisance, which cannot be removed without paving the
same.    Resolved, that the same be forthwith paved."    And that
the books in which said entries are found and taken from, are
the books, and only books, of the commissioners of health and
city commissioners, in which all their proceedings are entered.
The plaintiffs further gave in evidence the following warrants :
"City of *Baltimore,* sct.    We the city commissioners, as also
commissioners of health, conceiving *Barre street,* between
*Charles* and *Light streets,* to be in a state of nuisance, which
might endanger the health of the city, and which nuisance in

our opinion cannot be removed but by paving, do adjudge and determine that the same be paved front of the lots bounding thereon, have caused to be made the following list of the names of the persons who are liable to pay the tax by law directed to be levied for paving said street front of said lots." In that list is the name of *Christopher Hughes*, $728. 28.

"City of *Baltimore,* sct. By virtue of an ordinance, entitled, An ordinance directing the manner of collecting and appropriating the money levied for paving the streets, lanes and alleys, in the city of *Baltimore,* as also an ordinance, entitled, An ordinance for the more equal assessing and levying the paving tax on the streets, lanes and alleys, in the city of *Baltimore,* and agreeably to an ordinance respecting nuisances, we, the city commissioners, do hereby authorise and direct you to collect from the several persons whose names are hereto above annexed, the several sums of money opposite their respective names, being the paving tax on *Barre street,* between *Charles* and *Light streets.* That you will make the collection aforesaid, and pay the same to the register of the city, agreeably to the ordinances aforesaid, and this shall be your sufficient warrant therefor. Given under our hands and seals this twentieth day of July, 1812." Signed and sealed by *Henry Stouffer,* &c. the city commissioners, "23d July, 1812. Approved *Edward Johnson,* Mayor." To the collector City of *Baltimore.* On the back of which said warrant was thus endorsed—"Warrant for paving *Barre street* between *Charles* and *Light streets.* Dated 23d July, 1812. Ent."

"City of *Baltimore,* sct. We the city commissioners, as also commissioners of health, conceiving *Forrest street,* between *Lee* and *York streets,* to be in a state of nuisance, which might endanger the health of the city, and which nuisance, in our opinion, cannot be removed but by paving, do adjudge and determine, that the same be paved front of the lots bounding thereon, and have caused to be made the following list of the names of the persons who are liable to pay the tax by law directed to be levied for paving said street." In that list *Christopher Hughes'* tax was $496 07. A similar warrant to that last mentioned was issued on the 29th of July, 1812, by the commissioners for collect-

ing the tax, and which was approved by the mayor on the same day. On the back of which said warrant was thus endorsed— "Warrant for paving *Forrest street,* between *Lee* and *York streets.* Dated 29th July, 1812. Ent'd." The plaintiffs also gave in evidence, that *Barre street,* between *Charles* and *Light streets,* and *Forrest street* between *Lee* and *York streets,* then were, and still are, public streets in the said city of *Baltimore,* and that said *Christopher Hughes* was in possession, and claimed title to the property on *Barre* and *Forrest streets,* for about thirty years, at the time the said streets were paved, and that the city commissioners aforesaid, caused that part of *Barre street,* between *Charles* and *Light streets,* to be paved, and that the said proportion of the said paving tax therefor of the said *Christopher Hughes,* amounted to $728 28, as assessed to him by the city commissioners; and that the said commissioners caused that part of *Forrest street,* between *Lee* and *York streets,* to be paved, and that the proportion of the said paving tax, as charged by the city commissioners to the said *Christopher Hughes,* amounted to $496 07. The plaintiffs further offered in evidence, by *Elisha T. Bailey,* that he contracted with the said commissioners to pave the said parts of the said two streets last mentioned; that he did pave the same, and received payment therefor from the plaintiffs, and that the said *Christopher Hughes* was frequently present on the said parts of streets, when the witness was so paving the same, and requested a part thereof to be done in a particular manner, by objecting to certain stones used as improper, and requesting him to put in others, which the witness accordingly did: that the first part of said work was commenced in July, 1812, and finished either the last of July or first of August. Whereupon he immediately commenced the paving the other street, and finished the same in the fall of the year; that the said *Christopher Hughes,* when the said paving was finished, offered to pay the said *Bailey* for paving on said streets, so performed by him, provided he would take unimproved lots in payment therefor, which the said *Bailey* refused to do. The plaintiffs further gave in evidence that the said *Henry Stouffer,* &c. mentioned as the city commissioners, are the same persons

who composed the board of health of the said city, and were commissioners of health at the periods and in the year before mentioned; and they further gave evidence, that the several warrants herein before mentioned, were duly approved by the mayor of the city of *Baltimore*, before the same were issued and delivered to the collector of said city.

The defendant then, prayed the court to instruct the jury, that the plaintiffs were not entitled to recover for the paving of *Barre street*, between *Light* and *Charles streets*, and *Forrest* between *Lee* and *York streets*—1st. Because there is no evidence that the commissioners of health, or board of health, did at any time ascertain that a nuisance existed in the said streets, which would endanger the health of the city of *Baltimore;* and also because there is no evidence that the said commissioners of health, or board of health, did at any time report in writing to the city commissioners, that a nuisance existed in the said streets, which will or would endanger the health of the city of *Baltimore.*    2d. And because the plaintiffs, by virtue of the *thirteenth* section of their ordinance of the 9th of March, 1807, entitled, "An ordinance to appoint city commissioners, and prescribing their duties," could not confer a power on the said city commissioners to assess or levy a tax on any particular part or district of the city of *Baltimore*, or the proprietors or owners of such part or district, for the purpose of preventing or removing a nuisance, which will endanger the health of the city of *Baltimore.*    3d. Because it is in evidence, and uncontradicted, by the books and proceedings of the commissioners of health, or board of health, and of the city commissioners, that *Barre street* between *Light* and *Charles streets*, and *Forrest street* between *Lee* and *York streets*, were declared by the board of health to be in a state of nuisance, and that the commissioners of health had not declared the said streets to be in a state of nuisance, which will or would endanger the health of the city.    Which instruction the court [*Archer*, Ch. J.] gave to the Jury.    The plaintiffs excepted.

2. The plaintiffs, in addition to the evidence set forth in the preceding bill of exceptions, offered in evidence by *Henry*

*Stouffer*, a witness sworn on the trial on the part of the plaintiffs, that he was the only survivor of the board of city commissioners, and commissioners of health, for the year 1812; and the plaintiffs further offered in evidence, by the said witness, that in the month of July, 1812, *Barre street* between *Light* and *Charles streets*, and *Forrest street*, between *Lee* and *York streets*, were entirely on made ground, and that a nuisance existed in the said part of the said streets, which endangered the health of the city of *Baltimore*, and that the same could not be effectually removed without paving the same. To the admissibility of which evidence, the defendant objected; and the court were of opinion, that the said testimony was inadmissible, and refused to let the same go to the jury. The plaintiffs excepted.

3. The plaintiffs further prayed the court to instruct the jury, that upon the evidence contained in the preceding bills of exceptions, the plaintiffs are entitled to recover in this action the proportion of the paving taxes chargeable to the said *Christopher Hughes* in his life-time, for the paving of *Barre street*, between *Light* and *Charles streets*, to wit, the sum of $728 28, and for the paving of *Forrest street*, between *Lee* and *York streets*, to wit, the sum of $496 07, under the *fifth* and *sixth* counts, in their declaration for money paid, laid out and expended, and for work and labor done, and materials found and provided; which instructions the court refused to give. The plaintiffs excepted; and the verdict for the plaintiffs being only for the sum of $318, and judgment thereon rendered, they appealed to this court.

The cause was argued before BUCHANAN, Ch. J. and EARLE, MARTIN and STEPHEN, J.

*Taney* (Attorney General) and *J. Scott* for the appellants, contended that the court below erred in giving the instructions prayed for by the defendant, as set forth in the *first* bill of exceptions—1. Because the nature and character of the nuisances alleged to exist in *Barre street*, between *Light* and *Charles streets*, and in *Forrest street*, between *Lee* and *York streets*, were sufficiently ascertained by the proceedings of the board of health

and city commissioners, according to the ordinance of the 9th of March, 1807, (*Young's Ed.* 60, *sec. 13.*)—the board of health and city commissioners being composed of the same persons. *Ib.* 165.

2. Because the powers and duties of the board of health and city commissioners, being united by the ordinance (*Ib.* 165,) that part of the 13th *section*, which requires a report in writing from the board of health to the city commissioners, of the existence and nature of the alleged nuisance must be considered as repealed—such a report being absurd and unnecessary.

3. Because the existence and character of the nuisance, being ascertained by the tribunal competent to decide the question, and the plaintiffs having the power to tax as well as pave, by the act of 1797, *ch.* 54, in the absence of proof to the contrary, it must be understood to be a lawful exercise of those powers.

4. Because the nature of the nuisance shows that it was for the benefit of those districts that it should be removed; and the competent authorities had decided, that it could only be done by paving.

5. Because the powers to prevent and remove nuisances, to pave, and to tax for the said paving, have been properly exercised by the plaintiffs by their officers and servants.

6. Because the nature and character of the alleged nuisances are sufficiently ascertained by the commissioners of health and city commissioners, in the warrants issued by them, and no other ascertainment thereof was necessary.

7. The appellants also contended, that the court below erred in refusing to grant the prayer of the plaintiffs, contained in the *third* bill of exceptions; because they offered evidence, proper to go to the jury under the *fifth* and *sixth* counts in the declaration, to show the assent of the defendants' intestate to the paving of *Barre street,* between *Charles* and *Light streets,* and of *Forrest street,* between *Lee* and *York streets,* and the payment for the same by the plaintiffs; and that upon such assent the plaintiffs were entitled to recover from the defendant for such paving, and for the money so paid, laid out and expended.

They referred to the acts of Assembly and ordinances stated in

the bills of exceptions.    Also to *The Mayor &c. vs. Moore & Johnson*, 6 *Harr. & Johns.* 380, and *the Mayor &c. vs. Howard, Ib.* 91.

*R. Johnson* for the appellee.    1. The character of the nuisance was not sufficient to justify the paving, under the ordinance of the 9th of March, 1807, *sec.* 13.—2. The paving was not such as authorised the imposition of the tax laid under the act of 1797, *ch. 54.*    3. The plaintiffs were not entitled to recover under the general counts in the declaration, for work and labor done, &c.

BUCHANAN, Ch. J. delivered the opinion of the court.

A recovery by the plaintiffs of the taxes imposed under the 13th *section* of the ordinance of the *9th of March,* 1807, is resisted by the defendant on two grounds.

1st. That the power given by the ordinance has not been well executed.

2d. That the ordinance itself is not authorised by the charter.

The second ground relied upon involves the construction both of the charter and the ordinance, and will be first examined.

The *second* section of the act of 1797, *ch.* 54, a supplement to the act incorporating the city of *Baltimore*, gives to the corporation power to pass all ordinances, necessary for paving and keeping the streets, &c. in repair, "and to tax any particular part or district of the city for paving the streets, lanes or alleys therein, or for sinking wells, or erecting pumps, *which* may appear for the benefit of such particular part or district." In the case of *The Mayor and City Council of Baltimore, vs. Moore and Johnson,* 6 *Harr. & Johns.* 380, it was decided by this court, that the word *which* in that provision of the act, related as well to the paving the streets, lanes and alleys, as to the sinking of wells and erecting pumps, and that the corporation had authority to tax any particular part or district of the city, for paving the streets, lanes or alleys therein, which might appear for the benefit of such particular part or district. The reasoning by which that conclusion was arrived at, need not be re-

peated in this place.     A different construction however would certainly be at war with the intention of the legislature, as it never could have been contemplated, to give to the corporation the power to tax any *particular* part or district of the city, for any paving which was for the *general* benefit, and not for the benefit of the *immediate* part or district taxed; which under a different construction, would be the effect of the second section of the act of 1797, taken altogether.     Under this restricted construction, limiting the power of the corporation to tax any particular part or district of the city, for paving the streets, lanes and alleys therein, to a paving which shall be, or appear to be for the benefit of such particular district, and not for the general benefit of the city, which ought to be paid for out of the general fund, and not by the imposition of a special tax upon any particular part of the city, we think the corporation is not confined to any particular description of benefit, such as the ordinary benefit and advantage of paved streets; and that the preservation of the health of such particular part of the city, is a benefit within the meaning and scope of the act.

The legality of levying the tax, does not depend upon whether the paving does or does not in fact benefit the particular district that is taxed, but upon the object, the motive of the corporation in causing the paving to be done.     And in an ordinance providing for such paving, and the imposition of such a special tax, it is not necessary that it should be expressly stated to be for the benefit of the particular district: but if nothing appears to the contrary, such an exercise of the special taxing power, will be taken to have been in pursuance of the authority given by the charter.     It will be presumed that the corporation did not exceed its powers, but imposed the tax for the purpose only, for which the charter authorises it to be imposed, and that the paving appeared to the city council, to be for the benefit of the particular district.

But where an ordinance provides for the paving a street, &c. in a particular district, and the imposition of a special tax for that purpose on such district, which paving appears by the or-

dinance to be for the general benefit of the city, and not for the benefit of the particular district, such an ordinance is not in pursuance of the authority conferred by the charter, and is void. And such it is contended is the character of the 13th section of the ordinance of the 9th March, 1807, providing for the imposition of the taxes the recovery of which in this suit is resisted.

The provision of that section is in these words, "that if the commissioners of health, shall at any time report in writing to the city commissioners, that a nuisance exists in any street, lane or alley in the city of *Baltimore*, which will endanger the health thereof, and the city commissioners upon a full examination thereof, should be of the same opinion, and that the same cannot be effectually removed, without paving such street, lane or alley, they are hereby authorised and required, to proceed to the paving of such street, lane or alley, and to issue their warrant under their hands to the city collector, directing him to collect the tax which may be imposed for the paving the same, &c.

It is supposed that, it appears upon the face of this ordinance, that the nuisance here authorised to be removed by paving the street, &c. in which it may be found to exist, is such a nuisance only, as in the opinion of the commissioners of health and the city commissioners, will endanger the health of the *city* generally, and not of the particular district in which the paving is authorised to be done, and the tax to be imposed; and that the paving and taxing is intended for the general benefit of the *city* and not of the particular district. If such be the true construction of the ordinance, it cannot be questioned, that it was unauthorised by the charter, and that provision of it nugatory and void.

But to arrive at that conclusion, it must either be assumed, that a nuisance cannot exist in any particular part or district of the city of *Baltimore*, affecting or endangering the health of such particular part or district, without also so affecting or endangering the health of the whole city, or of the city generally, as to be a matter of such general concern, as that the means resorted to for removing it, can only be paid for out of the general fund, and not by a tax upon the particular district in which it may exist; and consequently that the paving contemplated

and provided for by this ordinance, could only have appeared to be, and been intended for the general benefit of the city, and could not have been considered to be and intended for the benefit of the particular district to be paved, or that the language of the ordinance is such, as to show the object of the paving provided for, to be the general benefit of the city, and not the benefit of the immediate district.

With respect to the first of these positions, it by no means appears to us, that a nuisance cannot exist in a particular part or district of the city of *Baltimore*, affecting or endangering the health of such part or district, without also affecting or endangering the health of the city generally, and that no paving can be authorised for the removal of a nuisance endangering the health of a particular district, without having for its object the general benefit of the city, and not the benefit of the district in which the nuisance may exist. And if such a nuisance may exist, of which the corporation is competent to judge, it has authority, under the charter, to pass an ordinance for the removal of such a nuisance by paving, and to impose a local tax for that purpose, if it shall appear to be for the benefit of the particular district, in which the paving is authorised to be done. And if there be nothing expressed in this ordinance to the contrary, the presumption is, that the nuisance contemplated, is one endangering the health of the immediate district in which it exists, and that the sole object of the paving provided for, is the benefit of that particular district. Is there then any thing in the language of the ordinance to sustain the second position? Is there any expression pointing to the preservation of the general health of the city, or to the general, and not a local benefit, as the motive for authorising the paving provided for?

This case has been argued, as if the language of the ordinance was, " which will endanger the health of the city." But whatever might be the effect of such words if used, that is not the language of the ordinance; the commissioners in their warrants say that they conceive the streets directed to be paved, "to be in a state of nuisance, which might endanger the health of the city." And it is probable that, the language of the war-

rants and of the ordinance, may have been confounded by the counsel. The words of the ordinance are, "that if the commissioners of health shall at any time report in writing to the city commissioners that a nuisance exists in any street, lane or alley in the city of *Baltimore*, which will endanger the health thereof," &c. Not in terms the health of *the city*, but *thereof;* and the question is, whether the word *thereof* must be held to relate to the *city of Baltimore*, or may refer to the *street, lane or alley* in which a nuisance may be found to exist.

The power given by the charter under which this ordinance was passed, is, "to tax any particular part or district of the city, for paving the streets, lanes or alleys *therein*, or for sinking wells or erecting pumps which may appear for the benefit of such particular part or district." Now it has never been pretended, that the word *therein* in that clause related to the *city*, and meant for paving the streets, lanes or alleys, *in the city*. But it has always been considered, (and properly,) that it related to *the particular part or district* of the city to be taxed, and meant for paving the streets, lanes or alleys in such *particular part or district*. And the only question raised on that clause of the charter, in the *Mayor, &c. vs. Moore & Johnson* was, whether the latter part of it, "which may appear for the benefit of such particular part or district," related to the sinking of wells and erecting pumps, or extended also to the paving the streets, &c. So here we think that the word *thereof* in the ordinance, does not relate to the *city of Baltimore*, so as to make it mean a nuisance which will endanger the health of the *city of Baltimore:* But that it relates to *any street, lane or alley, &c.*, and means a nuisance that will endanger the health of such *street, &c.* The words *in the city of Baltimore* being only used as descriptive of where the street, &c. lies. And that there is nothing appearing upon the face of the ordinance, to show that the general benefit of the city, is the object of the paving provided for, and not the benefit of the particular district to be taxed.

This construction, brings the ordinance clearly within the power conferred by the charter, and although it is true, that a corporation must act within the limits of its delegated authori-

ty, and cannot go beyond it, yet it ought not by construction, to be made to mean what is not clearly expressed; but when an ordinance will admit of two constructions, it should receive, that which is consistent with the power given, and not that which is in violation of it.

The other ground relied upon by the defendant, is, that conceding the ordinance to be justified by the charter; yet the power given by it, has not been well executed, and two objections are raised ; first, that by the ordinance, a report in writing is required of the existence of a nuisance, &c. by the commissioners of health, to the commissioners of the city, which does not appear to have been made. Second, that the ordinance requires the nuisance to be of such a character, as *will*, in the opinion of the commissioners, endanger the health, &c. and that the commissioners have not so stated.

There is nothing in the first of these objections. The ordinance of the 22d of March, 1807, uniting the powers and duties of the city commissioners and commissioners of health, provides for the appointment of four persons to be city commissioners and commissioners of health, with all the powers and duties united in them, of the commissioners of health and city commissioners, and surely the formality of a written report by them to themselves was necessarily dispensed with. Besides there would be an inconsistency between the two ordinances, the one uniting the two bodies into one, and the other requiring the one to make a report to the other, when no such separate bodies existed, and the ordinance of the 22d of March, 1807, expressly repeals all such parts of the ordinance of the 9th of March, 1807, as are inconsistent with any thing contained in it. An entry in the books of the commissioners of their decision is not required, and the certificates in their warrants of the existence of the nuisances and of their characters, would have been sufficient, *if* in other respects the ordinance was complied with. But the ordinance has not been complied with; the warrants of the commissioners should, to gratify the ordinance, have contained statements of the existence of nuisances in the respective streets specified, which *would* in their opinions endanger the

health thereof, and not that they *might* do so. A positive and decided opinion is required, and not the expression of a doubt, as to the dangerous character of the nuisance to be removed. And it is evident from the terms used by the commissioners, that they had formed no decided opinion on the subject. They say in each warrant, that they conceive the street mentioned, to be in a state of nuisance *which might endanger the health of the city,* apart from the danger they speak of to the health of *the city,* instead of the health of the particular street, which is of itself a departure from the provision of the ordinance; the opinion they express, is not such as the ordinance requires. The nuisance authorised to be removed, is required to be such, as in the opinion of the commissioners *will* be dangerous, and not such as *may* by possibility be dangerous; and the second objection is we think well taken.

The second exception was properly abandoned at the argument. The ordinance requiring the evidence of the existence of a nuisance, and of its dangerous character and tendency, to be in writing, the plaintiff was not competent to prove it by oral testimony at the bar.

The action for money paid, laid out and expended, must be founded upon a contract express or implied, and it is a settled rule, that no person can by a voluntary payment of the debt of another, without his authority, make himself a creditor of the person whose debt is thus paid; but if one is compelled, or is in a situation to be compelled to pay the debt of another, as in the case of a surety, and does pay it, the law implies a promise on the part of him for whom the money is *paid,* on which an action may be sustained, for in such case, it is not a voluntary but a compulsory payment.

In this case there was no debt due by the defendants' intestate, and the payment made by the plaintiffs was on account of a contract entered into between the commissioners and the man who did the paving. But if there had been a debt due by the defendants' intestate to the workman who did the paving, which the plaintiffs were not compelled to pay, a voluntary payment

by the plaintiffs without the authority or request of the defendants' intestate could not raise an assumpsit against him; and there is no evidence of any such authority or request. Or if the defendants' intestate was indebted to the plaintiffs on account of the taxes imposed, that liability would not sustain a count for money paid, laid out and expended, which is the fifth count in the declaration in this case.

And we can perceive no ground on which the construction prayed for to the jury, that the plaintiffs were entitled to recover on the sixth count for work and labor done, &c. could have been properly given. The defendants' intestate was under no legal obligation imposed by the ordinance, to pay for the paving done; and the work was not done at his instance, but by the plaintiffs, under and in pursuance of one of their own ordinances, and in the supposed exercise of their corporate powers.

We concur therefore in opinion with the court below on all the bills of exceptions.

JUDGMENT AFFIRMED.

*Note.* The doctrine that no person can by a voluntary payment of the debt of another, without his authority make himself a creditor of the person whose debt is thus paid, has been qualified by the *Act of* 1829, *chap.* 51, which enacts "that any assignee or assignees, *bona fide* entitled to any judgment, bond, specialty or other chose in action *for the payment of money* by assignment in writing, signed by the person or persons authorised *to make the same,* may by virtue of such assignment, sue and maintain an action or actions, execution or executions, in any court of law or equity in this State, as the case may require, in his, her, or their names or names against the obligor or obligors, debtor or debtors, therein named, saving and reserving to the defendant or defendants, all such legal or equitable defence as might or could have been had or maintained against the assignor or assignors at the time, and before notice of the assignment, in the same manner and to the same extent as if no such assignment had been made." REPS.