# MARYLAND REPORTS.

## OCTOBER TERM, A. D., 1880.

THE MAYOR AND CITY COUNCIL OF BALTIMORE, AND
CHARLES WEBB, Collector of Taxes *vs.* THE JOHNS
HOPKINS HOSPITAL, and others.

*Presumption in an Ordinance as to those who would be Specially
benefited by an authorized Improvement—Mayor and City
Council of Baltimore the Exclusive Judges of the benefit to
property along the line of an authorized Improvement—
When a Court·may interfere to prevent the Execution of a
local Assessment imposed for an alleged Improvement—
Ordinance for the Repaving of a Street already Opened and
Condemned, not invalid through Failure to provide for
Notice of the proceedings under it, to the Owners of Adja-
cent property—Exclusive Legislative power in respect of a
Special Assessment—Ordinance No. 68, of the City of Balti-
more, approved June 26th, 1878, for the Repaving of a part of
Pratt Street—The Front-foot rule of Apportionment of the cost
of an Improvement—Power properly delegated to the City
Commissioner by the Mayor and City Council of Baltimore.*

Where there is nothing upon the face of an ordinance, authorizing a
particular improvement, to indicate that those who passed it,
judged that the improvement was for the public convenience
exclusively, and not for the benefit of the particular district, the
presumption is·that they determined that those who were specially
assessed, would be specially benefited.

Whether an improvement authorized by the Mayor and City Council
of Baltimore will benefit the property along the line of such
improvement, is a question left exclusively to their judgment, and
their determination in the premises is *final and conclusive.* The

1          v. 56.

Courts have no power to review such determination at the instance of the property owners specially taxed.

If a local assessment imposed for an improvement, directed to be made, should so far transcend the limits of equality and reason, that its execution would cease to be a tax, or contribution to a common burden, and become extortion and confiscation, it would be the duty of the Court in such case to interfere to protect the citizen.

An ordinance imposing an assessment upon the owners of adjacent property for the repaving of a street already opened and condemned, is not rendered invalid by failing to make provision for notice of the proceedings under it to such property owners, and to give them an opportunity of being heard before the charges are fully established against them, the imposition of such assessment being an exercise of the taxing power, and not of the right of eminent domain.

The power to determine when a special assessment shall be made, on what basis it shall be apportioned, over what district it shall extend, and whether the particular improvement will confer a benefit upon property in the immediate locality beyond that which will accrue therefrom to property more remote, or the public generally, is a power confided to the legislative department, to be exercised, subject to such provisions, and under such restrictions only as the law makers may see fit, in each case to prescribe.

The City Commissioner in executing Ordinance No. 68 of the Mayor and City Council of Baltimore, approved June 26th, 1878, authorizing the repaving of Pratt street between Jones' Falls and Howard street, applied the correct rule of apportionment by assessing two-thirds of the cost of the improvement upon the property binding on Pratt street, according to the front-foot.

The Ordinance (No. 68, of the Mayor and City Council of Baltimore, &c.,) authorized assessments only on property fronting on that part of Pratt street which was directed to be repaved, and not on property throughout the entire length of the street.

The Mayor and City Council of Baltimore in entrusting to the City Commissioner by Ordinance No. 68, approved June 26th, 1878, the ascertainment of the cost of repaving Pratt street within prescribed limits, and the apportionment under the rule to the property owners, being matters of measurement and arithmetical calculation, properly confided to a ministerial agent, did not delegate to such officer any power they were not authorized to confer.

APPEAL from the Circuit Court of Baltimore City.

Under Ordinance No. 68, of the Mayor and City Council of Baltimore, approved June 26th, 1878, authorizing and directing the City Commissioner, to have Pratt street, between Jones' Falls and Howard street repaved in a specified manner, the City Commissioner proceeded to have the work done. When the expense of the work was ascertained, and it became necessary to provide for it, the City Commissioner charged one-third, under the direction contained in the Ordinance, to the Mayor and City Council of Baltimore, and assessed the remaining two-thirds upon those persons only who were owners of property on Pratt street between the prescribed limits, among whom were the appellees. The City Commissioner in determining the amount which the appellees as such owners, should respectively pay, adopted the rule of assessment by the front foot of property binding on the line of the improvement. The bill in this case was filed by the appellees, who subsequently filed an amended bill. The object of the bill was to restrain by injunction the Mayor and City Council of Baltimore, and Charles Webb, collector of taxes, from collecting the assessments imposed upon the complainants. A *pro forma* decree was passed annulling the assessments imposed, and perpetually enjoining the collection of the same. From this decree the respondents appealed.

The cause was argued before BARTOL, C. J., MILLER, ALVEY, ROBINSON and IRVING, J.

*Thomas W. Hall, City Solicitor,* and *James L. McLane, City Counsellor,* for the appellants.

It is conceded that the Act of 1874, ch. 218, which repeals all former Acts upon the subject, and from which all present powers of the Mayor and City Council, in regard to the paving, &c., of streets, and the collection

of paving assessments, are derived—makes absolutely no provision whatever for notice of any kind. It is said, however, that this omission of the Legislature, does not dispense with the necessity of notice in order to warrant the exercise of the powers conferred by this Act, and it is intimated that the omission may be supplied by *municipal* legislation. The analogy relied upon, however, as being furnished by the requirement (*by Act of Legislature*) of previous notice, in order to warrant the passage of Ordinances *to open and condemn streets*, wholly fails in its application to Ordinances to pave or repave streets already opened and condemned, and in use as public highways.

The subject-matter of the two classes of Ordinances is wholly distinct. An Ordinance to condemn private property for the purposes of a street or highway, is an exercise of the power of eminent domain delegated *pro hac vice*, by the Legislature to the municipality. It is subject to all constitutional restrictions in regard to the "taking of private property for public uses," which can only be done by "due process of law." It involves a necessary co-operation or concurrence of the legislative and judicial functions—the legislative, to decide upon the necessity and extent of the "taking"—the "judicial" to *legalize* the taking, and to determine the measure of compensation. Every such "taking" is, or may become "a case in Court," and require the intervention of a jury; hence notice may well be deemed essential, to give jurisdiction, and to initiate proceedings in such cases. *Mayor, &c., of Baltimore vs. Ritchie,* 51 *Md.*, 233; *Kohl vs. U. S.,* 91 *U. S. S. C.,* 367–376.

On the other hand, an Ordinance to pave or repave a public highway, and to impose a tax for the purpose, *is a purely legislative measure.* The power of the Legislature to legislate for such purposes is not dependent upon notice to the parties to be affected by its exercise—otherwise all

road-laws and all State and county taxes levied for the repairs of bridges and highways, passed without notice, would be void.

The imposition of a paving-tax or assessment, is an ex-ercise of the taxing-power, and not of the power of eminent domain. *The Greenmount Cemetery Co's Case,* 7 *Md.,* 517; *Cooley on Cons. Lim.,* 620; *Cooley on Taxation,* 429–430; *Dill. on Mun. Cor., secs.* 589 and 590; 2 *Dill. on Mun. Cor., secs.* 589 and 596.

The supposed analogy fails in another particular. The statutory provision referred to, requiring previous notice of any Ordinance to open and condemn streets, is that *before* any such Ordinance shall be passed, " at least sixty days' notice shall be given *of any application for the passage of such Ordinance,*" &c. *Public Local Laws, Art.* 4, *sec.* 838.

There is a distinction between proceedings to open and condemn, and proceedings to pave, &c., and the fact *that notice is not required* in the latter class of proceedings has been decided by this Court in *Dashiell's Case,* 45 *Md.,* 616, 625–6.

The analogy also relied upon as being furnished by the Act of 1870, ch. 322, is equally at fault. That Act un-doubtedly required notice, both by publication and by personal service, (in certain cases,) to authorize the grading, paving, &c., of streets, and assessments upon the property holders therefor. It was notice, however, *not of the assessment,* but of " *the determination* " to grade, pave, &c.; and a right of appeal to the Baltimore City Court, and a jury was given by the Act to any person " *aggrieved by such determination.*"

In the case of an Ordinance to grade, pave, &c., under the Act of 1874, ch. 218, sec. 2, the Ordinance itself is the " determination," and it is made FINAL, and no right of appeal to any Court is given. The reason for notice which existed in the one case, wholly fails in the other.

The necessity of notice is insisted upon as a fundamental constitutional maxim. If so, it must apply as well to laws passed by the Legislature as to Ordinances of the Mayor and City Council. What then shall be said of the laws passed at every session, without notice by the Legislature, authorizing local improvements, the cost whereof is required to be defrayed by local assessments, and the validity of which laws and asessments has been repeatedly sustained by this Court? In principle, it is. not easy to distinguish between an Act of the Legislature, passed without "*notice*," authorizing the construction of a bridge, and assessing the cost upon the taxable property on opposite sides of the stream, and an Ordinance for paving a highway and assessing the cost upon the property holders on opposite sides of the street.

The claim now advanced would also seem to make *notice essential to the validity of the assessment*, independently of any question of the validity of the Ordinance. And the cases of *Stuart vs. Palmer*, 74 *N. Y.*, 183, and *Davidson vs. New Orleans*, 6 *Otto*, 104, are relied upon to support this position.

These cases of notice relied upon to sustain the position of the appellees, are not in point.

The proceedings before the Commissioners for Opening Streets, are quasi-judicial. They have for their object the "taking of private property for public uses," and ascertaining its value. The Legislature has coupled with this inquiry the further duty of estimating the benefits which may accrue to other property from such "taking" and public use. The proceedings are in the nature of an inquisition into benefits and damages—subject to an appeal to a jury and to review by a Court. The assessment of benefits in such case is referred to the sound discretion and judgment of the assessors. It is a judicial act. This was the mode of assessment provided for in the New York case above referred to, (page 186.)

Both *Stuart vs. Palmer,* and *Davidson vs. New Orleans,* were cases of "assessment made by assessors or Commissioners appointed for the purpose under legislative authority, and who are *to view the estates* and to levy the expense in proportion to the benefits, which, *in their opinion,* the estates respectively will receive from the work proved." *Cooley on Taxation,* 448.    While this is the case of " an assessment by some definite standard fixed upon by the Legislature itself, and which is applied to estates by *measurement of length, quantity or value." Cooley on Taxation,* 448.

It was upon the very ground that the assessment was arbitrary and discretionary with the assessors, that the New York Court of Appeals held that notice was necessary.    It was the right of the party assessed, to be heard, and to offer evidence, if necessary, upon the question of benefits.

" On the other hand, and on like reasoning, it has been held equally competent *to make a street a taxing district,* and assess the expense of the improvement upon the lots in proportion to the frontage.    Here also is apportionment by a rule which approximates to what is just, but which, like any other rule that can be applied, is only an approximation to absolute equality.    But if, in the opinion of the Legislature, it is the proper rule to apply to any particular case, *the Courts must enforce it." Cooley on Con. Lim.,* 631, 632.

No such question can possibly arise in any case of assessment for paving or repaving in the City of Baltimore.

The assessment is not upon the property believed to be benefited in "the judgment of " the City Commissioner.    The Act of Assembly is specific in its directions. The tax is to be assessed upon the property *binding on the street* which is paved or repaved, as the case may be.    It is to be assessed, it is true, "*pro rata*" upon such prop-

erty, but there never has been any doubt as to how that *pro rata* should be ascertained. There is but one rule or method of assessment for paving or repaving authorized or followed in Baltimore City since its first incorporation by the General Assembly, and that is *the rule of assessment by the front foot.* There is nothing, therefore, arbitrary or discretionary about the assessment. It is not a judicial, but a ministerial act. It is a matter of simple arithmetic. The Mayor and City Council determine as they are authorized to do—by Ordinance—and as they did determine in the present case—the proportion of cost to be assessed upon the property holders—fixing it, in the case of the Pratt street improvement, at two-thirds. When the improvement is completed, and the cost ascertained, which cannot be done before, the assessment of each individual property holder is fixed by the number of front feet owned by him. So many lineal feet of street paved or repaved, at the cost of so many dollars and cents, is at the rate of so much per foot. The cost per foot, multiplied by the number of front feet of any given lot or property, gives the *"pro rata"* of that lot. No notice or hearing can change or affect this result. To provide for an appeal in such case would be like appealing from the multiplication table. So far from the Ordinance No. 68, of 1878, for the repaving of Pratt street, being liable to the objection of delegating to the City Commissioner a judicial discretion in regard to the *mode* of assessment— the rule of assessment by the front foot is so fixed, not only by custom, *but by law and Ordinance,* that the Commissioner could not lawfully proceed to assess in any other manner, and in making the assessment under the Ordinance he performed a simple ministerial duty, like that of making tape-line measurements and superintending the mechanical execution of the work. That such duty may be lawfully delegated, and that a municipal corporation in such matters can only act through the

agency of its officers and servants, will not be questioned. *Northern Central Railway vs. Mayor, &c., of Baltimore,* 21 *Md.,* 93.

It is true that the Ordinance No. 68 of 1878, does not in terms, upon its face, prescribe the mode in which the two-thirds of the cost to be charged to the property holders shall be assessed. But it contains a reference to the provisions of general Ordinance No. 44 of 1874, and it is conceded that if that Ordinance, or any other general Ordinance upon the subject, prescribes the mode of assessment, the objection falls to the ground. A careful examination and comparison of the several provisions of said Ordinance No. 44 of June 4th, 1874, and particularly of secs. 4, 8 and 17, it is believed, will remove all doubt from the mind of the Court upon this point.

Both Ordinances—the special Ordinance No. 68 of 1878 and the general Ordinance No. 44 of 1874—having been passed in pursuance of the provisions of the Act of 1874, ch. 218, should be properly considered and construed in connection with said Act. The language of the several sections of the Act should also be compared for the same purpose, and according to the maxim that statutes *in pari materia* may be compared together, the Act itself should be considered in connection with the chain of legislation, covering a period of nearly a century, of which it forms a part. Baltimore City has never been without a paving law. It has never been without Ordinances upon the subject. These laws and Ordinances have been homogeneous. Whatever changes both laws and Ordinances have undergone in the lapse of time, in one point they will be found never to vary. They recognize and authorize no other system of assessing for paving and repaving *than by front foot.*

It will be found that the language of the latest Act and Ordinance does not vary substantially from that of the earliest. The language which is now supposed to be

fatally ambiguous, has never been misunderstood or found ambiguous before, although numerous cases have been before this Court, involving the validity of assessments imposed under these Ordinances, and the assessments which were in every instance recognized by the Court *to have been imposed by the front foot,* have been sustained. *Dashiell vs. M. & C. C.,* 45 *Md.,* 615; *Howard vs. First Church,* 18 *Md.,* 451; *Clements vs. M. & C. C.,* 16 *Md.,* 208 ; *Henderson vs. M. & C. C.,* 8 *Md.,* 352; *M. & C. C. vs. Cemetery Co.,* 7 *Md.,* 517; *Eshbach vs. Pitts,* 6 *Md.,* 71.

The equities of the case, are all upon the side of the appellants, when the facts are properly considered ; and it is the appellees who should be estopped from resisting or evading payment of their assessments for an improve-ment which, with full knowledge, they permitted to be made without protest or demur, and of all the advantages of which they are now in the full enjoyment. In other States such acts of acquiescence have been held fatal to any such claim for relief as has been set up by these appellees ; and it has been expressly decided that an owner of real estate who stands by and sees a street improved in front of his property, under a contract made under an order of the City Council, cannot, *after the work is completed,* refuse to pay for it. *La Fayette vs. Fowler,* 34 *Ind.,* 140 ; *Sleeper vs. Bullen,* 16 *Kans.,* 300; *Weber vs. San Francisco,* 1 *Calif.,* 455.

*Edward Otis Hinkley* and *Charles J. M. Gwinn, Attorney-General,* for the appellees.

I. The provisions in the Code of Public Local Laws, Article 4, sub-title " City of Baltimore," codified in 1860, embraced all laws relating to the future administration of the corporate powers of the city, which remained in force on January 12th, 1860. *See chapter* 1 *of Acts of* 1860. All prior legislation, conferring similar or different corpo-

rate powers, was superseded by the provisions of Article 4 of the Code of Public Local Laws, according to the rule in *Appeal Tax Court vs. Western Md. R. R. Co.*, 50 *Md.*, 296; *Strauss vs. Heise*, 48 *Md.*, 297; *Montel vs. Consolidation Coal Co.*, 39 *Md.*, 164; *Wade vs. St. Mary's Industrial School*, 43 *Md.*, 181; *Dashiell vs. Mayor, &c.*, 45 *Md.*, 624.

It follows, therefore, that all the powers of the Mayor and City Council of Baltimore, over the paving or repaving of the streets and foot-ways of the city in 1860, were embraced in sections 844, 845, 846, 847, 849 and 850, and in sections 852 and 861 of Article 4 of the Code of Public Local Laws, since these were the only existing provisions of law applicable to the subject.

The power of the corporation to repave any street, and to renew the curb-stones thereon existed, from 1860 to 1874, under the provisions of this Local Code, only when the owners of two-thirds of the property fronting on such street made application for such improvement.

When such application was made, and the desired work was contracted for, the Mayor and City Council were, under the Public Local Code of 1860, directed to pay the whole expense of repaving the streets or alleys, crossing the line of the projected improvement, and *one-third of the expense of the renewal of the curb-stones;* and the *remaining two-thirds of the whole expense* was directed to be paid by the *owners* of property in proportion to the number of front feet, which they respectively owned on such street or alley, or on such part thereof as should be repaved. *Public Local Laws, Art. 4, sec.* 845. The Mayor and City Council were directed to assess upon the *owners* of property on the street or alley so repaved, their proportional part of such expense, and to collect it from them as other taxes were collected. *Ibid, sec.* 847. Except for the local provision in sec. 845, the assessment must have been, under Art. 81, sec. 1, on the basis of the assessments of properties on such street.

There was no provision made for imposing any part of the cost of paving or repaving any street, except upon such application, because, under the law, as it then stood, the Mayor and City Council of Baltimore had no power to direct such work of paving or repaving to be done except upon such application.

By the Act of 1870, chapter 282, section 861, of Article 4 of the Public Local Laws, relating to the paving of streets previously unpaved, was modified ; and by the Act of 1870, chapter 322, notice was required to be given of the proposed exercise of the power by the city, and a right of appeal was given.

The whole system was changed by the Act of 1874, chapter 218, sub-sections 2 and 3. Sections 844, 845, 846, 847, 848, 849 and 850, of Article 4 of the Code of Public Local Laws, and the Acts of 1870, chapter 282, and 1870, chapter 322, were repealed. 50 *Md.*, 296 ; 48 *Md.*, 297 ; 43 *Md.*, 181 ; 39 *Md.*, 164.

The Mayor and City Council were empowered by this Act, to direct such work to be done on any street by special Ordinance, without any prior application by the owners of property ; and to assess the cost of the work *in whole or in part*, as they might deem proper, *pro rata* upon the *property* binding on such street or part thereof. *Sub-section* 2. They were not required to pay for paving any cross street. No legislative rule was prescribed, which should govern the apportionment of any assessment.

They were authorized to provide by general Ordinance, for the repaving or recurbing of any street or part thereof, upon the application of the owners of a *majority* of the front feet of property binding on such street or part thereof, so proposed to be improved, upon terms and conditions to be prescribed in the general Ordinance ; and were empowered to assess the cost of the work in whole or in part, as they might deem proper, *pro rata* upon the *prop-*

*erty* binding on such street or part thereof. *Sub-section* 3.
They were not required to pay the cost of paving any
cross street. No legislative rule for apportioning such tax
was prescribed by the section.

It will be seen that the new system was wholly incon-
sistent with the former system. The two sub-sections of
the Act of 1874, ch. 218, referred to, superseded all prior
legislation conferring similar powers, and regulating the
modes of their exercise, operated as a repeal of such prior
legislation, and nullified all unexecuted City Ordinances
which were based upon such prior legislation. The Gene-
ral Assembly especially manifested its intent to confine the
legislative powers of the city to the limits, which it had in
terms prescribed, when it repealed section 850 of Article 4
of the Code of Public Local Laws. This section gave the
Mayor and City Council power to pass *any* Ordinances neces-
sary and proper to carry into effect the powers vested in
them in relation to repaving streets. The General Assem-
bly, when it repealed this section, obviously declared its
purpose by this decisive action, to confine the exercise of
the powers given over this particular subject of repaving
streets to the methods prescribed by *law.* It made clear
the limit which it intended to place upon its grant.
*Cooley on Taxation,* 209.

The second sub-section of the Act of 1874, ch. 218, was
apparently defective, because of its omission to provide
any sufficient rule of ascertaining the *pro rata* proportion
of the expense of the particular improvement which it
authorized to be apportioned among the *properties* binding
on the street or part of street, intended to be improved.
For it will be observed that the second sub-section of the
Act of 1874, ch. 218, neither prescribed the basis, which
should be adopted in making such apportionment, nor
authorized the Mayor and City Council of Baltimore to
prescribe such basis. In authorizing the Mayor and City
Council to assess such cost, *pro rata,* upon the property

binding on such street, it assumed the existence of a defined basis upon which such apportionment could be computed. The Act of 1874, ch. 218, repealed sections 845 and 847, of Article 4 of the Code of Public Local Laws relating to the City of Baltimore, which established or recognized the prior establishment of the front foot basis, thus manifesting a definite purpose to do away with *that* basis, but it did not, by its own terms, substitute another basis for making the particular apportionment; though the fixing the basis was a legislative power. *Cooley on Taxation,* 175, 177, 180, 448, 451.

The reason for the omission, and for the assumption that a provision of law already existed, sufficient to ascertain this basis was well founded.

The second sub-section of the Act of 1874, ch. 218, conferred upon the Mayor and City Council of Baltimore the power of imposing a special tax upon *property* binding on a street, or part thereof, which it might direct to be paved or repaved. The right to direct the imposition of such special tax upon such property rests upon the theory of the special benefit accruing to the particular property from the proposed improvement. *Mayor and City Council of Baltimore vs. Greenmount Cemetery,* 7 *Md.,* 536; *Schenley vs. Comm.,* 36 *Penn. St.,* 29, 57; *Washington Av. Case,* 69 *Penn. St.,* 360. It is manifest that different methods might be employed for apportioning the burden. The proportion, chargeable upon each piece of property benefited by the improvement, might be made to depend upon the areas of the respective lots, or upon the number of front feet in each lot, upon some mixed rule made up of both elements of calculation, or upon the value of the respective properties as they stood, whether improved or unimproved, as ascertained by the standard of the valuation made for purposes of State and municipal taxation.

The front foot rule had been abrogated. Did any other existing statute establish the rule applicable to such a case?

Mayor, &c. of Balt., and Webb *vs.* Johns Hopkins Hospital, *et al.*

It must be apparent to the Court that the value of the repective properties, as ascertained by the standard of the existing valuation made of them for the purposes of State and municipal taxation, was the standard which the common judgment would prescribe.

Parcels of property binding on a particular street, may be improved, or unimproved, or improved by buildings of very different values. Such parcels of ground, however, and the buildings upon them, constitute, as they·stand, *properties*, which are, to a large degree, affected in value by the condition of the highways, which they adjoin. If any such highway becomes out of repair, the properties binding upon it must, in general suffer nearly an equal *percentage* of loss of value. When that highway is improved, they must, in general, derive an equal percentage of benefit in increase of value. It is not apparent that, when such parcels of ground are made chargeable with any part of the cost of improving a highway, on which they front, the only proper rule for the apportionment among them of such part of the cost, is a percentage upon the value of such respective properties as they exist? That value is sufficiently ascertained by the valuations made of such properties for the purposes of taxation.

It cannot be denied that the charge, imposed upon property binding on a street for the paving, or repaving of such street, is a tax. *Mayor and City Council of Baltimore vs. Greenmount Cemetery Co.*, 7 *Md.*, 533; *People vs. Brooklyn*, 4 *New York*, 419; *Cooley on Taxation*, 148, 149.

It may be true that the Legislature was not obliged to make the valuations for purposes of State and municipal taxation of properties binding on a particular street, the basis which the Mayor and City Council should adopt for the special taxation intended for the improvement of such street. It might have adopted some other more arbitrary rule for ascertaining the basis of the particular tax; but it certainly was at liberty to adopt the equitable rule of

the assessment of such properties according to their taxable values, if it saw proper to do so. It was silent as to the basis and rule of such taxation, and abstained from the granting to the Mayor and City Council of Baltimore any power to prescribe such basis, because there existed a sufficient general provision of law defining that basis and rule. It had been provided in 1860, by Art. 81, sec. 1, of the Code, that *all* State and county taxes, and *all taxes in the City of Baltimore,* should be levied upon the assessment previously made, and upon such further assessments as might be made in conformity with law. This provision was in force when the Act of 1874, ch. 218, was enacted. It was re-enacted by the first sub-section of the Act of 1874, ch. 483, a law passed by the same General Assembly, which had enacted the Act of 1874, ch. 218. It was this basis which became operative when the front foot rule, established by sec. 845, of Art. 4, of the Code of Public Local Laws, was abrogated by the repeal of that section by the Act of 1874, ch. 218. It was this basis, which sub-section 2, of the Act of 1874, ch. 218, silently indicated as the basis of special taxation to be adopted in any Ordinance, passed in pursuance of its provisions. It was this basis, which the Mayor and City Council of Baltimore, when they enacted Ordinance No. 68, of 1878, ought in the exercise of their given power, to have made by general Ordinance, or by special Ordinance, the basis of the special tax which they sought to impose by that special Ordinance. The Mayor and City Council had no existing power to authorize the City Commissioner to select any other basis, than that which was prescribed by the Act of 1874, ch. 483, sub-section 1.

The legislative history of the city demonstrates that the basis of special taxation for the paving or repaving of streets, has always been prescribed by Acts of the General Assembly. The front foot rule was adopted by the Act of November Session, 1782, ch. 17. It was also

adopted in the Act of 1817, ch. 148, sec. 18.  It was pre-
scribed in the Acts of 1832, ch. 57, and 1833, ch. 40, and
in the Code of Public Local Laws, Art. 4, secs. 845 and
847.  When the basis prescribed in such cases was re-
pealed by the Act of 1874, ch. 218, unless the basis re-
ferred to in Art. 81, sec. 1, of the Code, as re-enacted by
the Act of 1874, ch. 483, sub-section 1, became the new
legislative basis, no adequate provision existed for making
the Act of 1874, ch. 218, sub-section 2, effectual, and it
became an inadequate grant of power to the Mayor and
City Council of Baltimore.

It may certainly be concluded, therefore, that the
second sub-section of the Act of 1874, ch. 218, considered
by itself, or in connection with other existing laws, did
not authorize the City Commissioner to adopt the *front
foot rule* in determining the amount of tax to be imposed
for the repaving of Pratt street, between Jones' Falls
and Howard street, which was charged upon the respec-
tive appellees.

II. The Mayor and City Council of Baltimore "are en-
trusted with certain powers, which are specially defined
and limited, and which can be exercised by them in the
manner and form only prescribed by law." *Horn vs.
Mayor and City Council of Baltimore,* 30 *Md.,* 223.  They
cannot by any Ordinance, either exceed, or abridge, the
legislative powers which have been thus conferred.  *State
vs. Graves,* 19 *Md.,* 373, approving *Gozler vs. Corporation
of Georgetown,* 6 *Wheat.,* 597; *Mayor and City Council of
Baltimore vs. Hughes,* 1 *G. & J.,* 495, 496; *Horn vs. Mayor
and City Council of Baltimore,* 30 *Md.,* 223.  They can
only enact such Ordinances, as are necessary to give
effect and operation to the powers vested by law in the
corporation.  *City Code,* 1869, *section 26, page* 14.

They have no inherent power to impose taxes.  *Cooley
on Taxation,* 209.  "They can tax only as the State, in
its wisdom, has thought proper to permit;" and if the

State has erred, the Legislature only can correct the evil. *Ibid.* All grants of taxing powers to such municipalities must be construed strictly. *Ibid.* The statutory authority must be strictly pursued. *Ibid,* 464. *Henderson vs. Mayor, &c.,* 8 *Md.,* 360. The Ordinance, executing such authority, must be certain in its directions—prescribing what is to be done, and not leaving what is to be done, under such Ordinance, to the discretion of city officials. *Cooley on Const. Lim.,* 202.

The second sub-section of the Act of 1874, ch. 218, vested in the Mayor and City Council of Baltimore a local legislative power. *Gozler vs. Corporation of Georgetown,* 6 *Wheat.,* 595; *State vs. Graves,* 19 *Md.,* 373.

Under the express terms of the second sub-section of the Act of 1874, ch. 218, and from the nature of the right conferred, the local legislative power thus granted could be exercised only *by Ordinance.* 1 *Potter on Corp.,* sec. 375.

As the power could be exercised only by Ordinance, it was necessary that any Ordinance, enacted to provide for the paving, or repaving of any street, should be in itself, or by reference to, or because of other sufficient existing and applicable laws of the State, or Ordinances of the corporation, a complete exercise of the granted legislative power. Otherwise the simple case would be presented of the inadequate execution by the corporation of a granted power. *Sedgwick on Construc. of Stat. and Const. Law,* (*2nd Ed.,*) 397–399.

It was certainly necessary that the Ordinance should have prescribed the rule, by which that part of the cost of repaving Pratt street, between Jones' Falls and Howard street, from which the city was relieved, should be apportioned among the persons, or properties, which were made chargeable therewith; or that it should have referred to some existing statutory rule, determining such apportionment, or have been in fact based upon some such

existing statutory rule.   For "the Legislature must, in every instance, prescribe the rule under which taxation may be laid; " " to refer the making of the rule to another authority would be in excess of legislative power." *Cooley on Taxation,* 50; *People vs. Mayor of Brooklyn,* 4 *Comst.,* 426 ; *McBean vs. Chandler,* 9 *Haskell, (Tenn.,)* 366– 368.   There was only one existing legislative rule, which the Ordinance could have prescribed, or to which it could have referred, or on which it could have been based. This was the rule, which had been prescribed by Art. 81, sec. 1, of the Code of Public General Laws, which had been re-enacted by sub-section 1 of the Act of 1874, ch. 483.   "All State and county taxes and all taxes in the City of Baltimore shall be levied upon the assessment heretofore made, and such further assessments as may be made agreeably to law."   This rule superseded the prior front-foot rule of apportionment, existing in the cases to which it applied, under secs. 845 and 847 of Art. 4 of the Code of Public Local Laws, title "City of Baltimore."   It was the only existing legislative rule relating to municipal taxation imposed upon a property basis in the City of Baltimore.

The Ordinance No. 68 of 1878, instead of prescribing or referring to this correct rule, required the repaving to be done according to the provisions of Ordinance No. 44 of 1874, as far as the said Ordinance was applicable.   The Ordinance thus referred to, supplied no rule applicable to the work intended to be done under Ordinance No. 68 of 1878.

The Ordinance No. 44 of 1874, was applicable only to the different case of improvements made by the City Commissioner, at the formal request of persons owning property to a prescribed amount on the street, or part of a street, in reference to which the application was made.

It is necessary to observe, moreover, that Ordinance No. 68 of 1878, and Ordinance No. 44 of 1874, were both

*ultra vires,* because they both authorized the particular·
special taxes to which they related, to be imposed upon
the *owners* of property in contravention of the express.
provisions of the Act of 1874, ch. 218, sub-sections 2 and 3,.
which directed the particular taxes to which they referred,.
to be imposed only on the *properties* made subject to such
tax.    *Ordinance No. 44 of 1874, sections* 8 and 17.    *Ordi-
nance No.* 68 of 1878.    The City had no right to create
the relation of debtor and creditor.    No such relation was.
created by the Act of 1874, ch. 218.    *West vs. Dowman,.
29 Weekly Reporter, (Chan. Div.,) p.* 6 ; *Neeman vs. Smith,
50 Mo.,* 525, 528 ; *Cooley on Taxation,* 470, 471, *note* 2.

It may, therefore, be concluded that the Ordinance No.
68 of 1878, was not a legally proper and sufficient exer-
cise of the powers conferred upon the Mayor and City
Council of Baltimore by sub-section 2 of the Act of 1874,.
ch. 218.

III.  The City Commissioner had no authority to exer-
cise, under the second sub-section of the Act of 1874,.
ch. 218, the discretionary powers, which had been vested
in the Mayor and City Council of Baltimore only.    He·
had no right to disregard the statutory rule, prescribed·
by Art. 81, sec. 1, of the Code of Public General Laws.·
for ascertaining the basis of the tax imposed by Ordi-·
nance No. 68 of 1878, and to adopt, in lieu of it a basis.
and rule supplied by the inapplicable provisions of Ordi-·
nance No. 44 of 1874.    He would have had, indeed, no·
power to observe even the statutory rule prescribed by·
sec. 1 of Art. 81 of the Code of Public General Laws,.
because that rule had not been prescribed for his govern-
ment, in the particular case, by any general, or special
Ordinance; and it would not have been competent for him
to have used this rule, prescribed for the government of·
the Mayor and City Council of Baltimore in the exercise·
of its particular legislative power, unless the said Mayor
and City Council, in obedience to the requirement of law,.

had made such statutory rule, by proper Ordinance, the rule for the government of the City Commissioner in the discharge of his particular duties.

No usage, or habit of proceeding, founded upon the repealed secs. 845 and 847 of the Public Local Code, or upon the provisions of an inapplicable general Ordinance, can countervail the true meaning of the statutory provision, contained in Art. 81. sec. 1, of the Code as re-enacted in the Act of 1874, ch. 483, sub-section 1, which made the assessed value of particular properties the sole standard for the imposition of all city taxes, or supply the lack of a legislative rule if the first sub-section of the Act of 1874, ch. 483, has not made this rule operative. No usage could confer upon the City Commissioner authority to prescribe a rule for the apportionment of taxes on any basis not ascertained by law, or according to any rule not sanctioned by law. *Hood vs. Lynn*, 1 *Allen*, (*Mass.*,) 107 ; *Foley & Woodside vs. Mason*, 6 *Md.*, 49 ; *Chesapeake Bank vs. Abell*, 29 *Md.*, 500. No usage certainly could confer such power in contravention of the express terms of positive law. *Cooley on Taxation*, 93, note 3.

It cannot be doubted that, under the Act of 1874, ch. 218, sub-section 2, the Mayor and City Council of Baltimore had the power to provide, by Ordinance for apportioning the cost of repaving Pratt street, between particular limits, among *all* properties situated along the entire length of Pratt street. There was a reason, not only for the grant of this power of extended apportionment, but for its exercise. All properties, touching upon any part of a great thoroughfare, are interested in the good condition of that thoroughfare in all its parts. They are benefited, or injured, in unequal degrees, it is true, when it is kept in good order, or becomes deteriorated ; but they are all, nevertheless chargeable in the discretion of the Mayor and City Council of Baltimore, with such share of the cost of the repair of the highway, as it may consider pro-

portioned to the benefits derived by such properties from its improved condition.

From whence did the City Commissioner derive his power to confine the assessment, made, under Ordinance No. 68 for the expense of repaving Pratt street, between Jones' Falls and Howard street, to the owners of property situated between Jones' Falls and Howard street? He certainly had no power to restrict the scope of the language of an Ordinance, which it was his duty to execute.

Finally. It will be observed that The Johns Hopkins Hospital, by which the proceedings for the injunction in the case were mainly initiated, and many others of the appellees, did not make any application for the repaving of Pratt street. The work was directed to be done by the Mayor and City Council of Baltimore upon such representations, as they saw proper to listen to, and in the exercise of an authority, which they claimed to possess. Neither the Mayor and City Council, nor the particular appellees, were estopped from setting up that the Ordinance under which the work was done was *ultra vires.* 1 *Dillon on Munic. Corp.,* (*2nd Ed.,*) sec. 381. The particular appellees were certainly not estopped from showing the invalidity of the Ordinance. *Starr vs. City of Burlington,* 45 *Iowa,* 90; *Rood vs. Board of Supervisors of Mitchell County,* 39 *Iowa,* 446.

The Johns Hopkins Hospital, and the appellees, who made no application to the Mayor and City Council for the repaving of Pratt street, certainly did not, by word or conduct, bring about the passage of the particular Ordinance. They did not represent, or conceal, any circumstance upon which the action of the city was based, or in any way influence such action. *Homer vs. Grosholz,* 38 *Md.,* 526. It does not even appear that any one of this class of appellees had any knowledge of the enactment of the particular Ordinance, or that anything had been

done by the Mayor and City Council, under that Ordinance, or of the assessments made under such Ordinance, until bills were presented to them after the completion of the work. Upon no possible theory can it be claimed that such appellees are estopped from setting up the invalidity of the particular Ordinance. *Pickard vs. Sears,* 6 *Ad. & Ell.,* 469, 33 *E. C. L. Rep.,* 117; *Bigelow on Estoppel,* 476, 477, 480; *Union Hall Association vs. Morrison,* 39 *Md.,* 290; *Hardy vs. Chesapeake Bank,* 51 *Md.,* 590; *In re Collie, L. R.,* 8 *Chan. Div.,* 817, 818. The *onus* of any such proof, if it existed, rests of course upon the appellants, who set up the estoppel, and no such evidence appears in the record, or exists. *Reynolds vs. Mutual Fire Ins. Co. of Cecil County,* 34 *Md.,* 289.

Nor are such of the appellees as joined in petitions to the Mayor and City Council that Pratt street might be repaved with the Belgian block pavement, in any worse position. They asked, in effect, that the Mayor and City Council of Baltimore should proceed to repave that street by the rightful exercise of proper corporate legislative power. They are certainly not estopped, because they asked that existing corporate powers might be rightly exercised, from showing that the Mayor and City Council of Baltimore exceeded such corporate powers, or executed them in a manner not sanctioned by law. *Mayor & C. C. of Balto. vs. Porter,* 18 *Md.,* 301. The doctrine of estoppel *in pais* has no application to this case.

Though it is, in general, true that when one stands by, and sees another laying out money upon property, to which he has some claim or title, and does not give notice of it, he cannot afterwards, in good conscience, set up such claim, or title, yet it is equally true that such person is not debarred from afterwards setting up such claim, or title, when such claim, or title, was equally well known, or equally open to the notice of both parties, when the money was thus laid out. *Browne vs. Trustees M. E.*

*Church,* 37 *Md.,* 124 ; *Hardy vs. Chesapeake Bank,* 51 *Md.,* 590.

It is not true that the citizen has no relief against an invalid Ordinance, unless he warns the municipal body, prior to its action, of its impending error, or notifies those appointed to execute the invalid Ordinance that he will resist its execution, or refuse to submit to the obligations, which such Ordinance may impose. The citizen is not bound, in order to protect his rights, to remonstrate with municipal authorities against the passage of improper Ordinances, which affect those rights. When such improper Ordinances are passed, and their execution would endanger his interests, he is not required to give notice to those, appointed to execute them, that he will resist their enforcement. He is not obliged to go into a Court of equity to restrain such enforcement until this measure of protection is necessary to the safety of his interests. If he acts in time, to protect his rights, either by injunction, or by resisting direct proceedings, taken against him, or against his property, he has acted in due season. A void Ordinance can derive no sanction from the silence of those whom it affects, if they avail themselves in time of the proper means to prevent its enforcement against themselves. The case of *Mayor and City Council vs. Grand Lodge,* 44 *Md.,* 446, 447, completely supports these conclusions, as do also the cases of *Horn vs. Mayor and City Council,* 30 *Md.,* 223 ; *Mayor and City Council vs. Porter,* 18 *Md.,* 301, and *Mayor and City Council vs. Hughes, Adm'r,* 1 *G. & J.,* 491.

MILLER, J., delivered the opinion of the Court.

Much importance has very properly been attributed to the questions presented by this appeal, and they have been twice argued. They not only involve important legal principles, but property owners in the City of Baltimore, and the city itself, are deeply interested in their

solution; for it is conceded that the collection or non-collection of taxes to a very large amount, levied under Ordinances of the same character and for like improvements already made, depends upon the decision of this case.

The appeal is from a *pro forma* decree of the Circuit Court, annulling the assessments upon abutting property, for a portion of the cost of repaving part of Pratt street, and perpetually enjoining the collection of the same. The main questions are the same that were discussed in the case of *The Mayor and C. C. of Balt. vs. Scharf, et al.*, 54 *Md.*, 499. After the opinion in that case, declaring the Ordinance and the assessments under it to be void, was filed, a motion for a re-hearing was made at the same term and granted. The argument in this case has therefore been received and taken as a re-argument of that. Upon this argument, and further consideration of the subject, a majority of the Judges participating in this decision, have reached a different conclusion from that expressed in the former opinion, and we shall now proceed to state the grounds upon which we hold the assessments to be valid.

By Ordinance No. 68, approved June 26th, 1878, (under which the assessments in the present case were made,) entitled "An Ordinance to provide for the repaving of Pratt street, between Jones' Falls and Howard street," it was enacted and ordained by the Mayor and City Council of Baltimore, " that the City Commissioner be and he is hereby authorized and directed to have Pratt street, between Jones' Falls and Howard street repaved, in pursuance of the Act of the General Assembly of Maryland, chapter 218, of April, 1874, and according to the provisions of Ordinance No. 44, of the Mayor and City Council of Baltimore, approved the 4th of June, 1874, providing for the grading, gravelling, shelling, curbing and paving of the streets, lanes and alleys of the City of Baltimore, *so far as the same may be applicable;*

said repaving to be done with Camp's process of Belgian block pavement; the expense thereof to be paid in the following manner, that is to say, one-third by the Mayor and City Council of Baltimore, *and two-thirds by the owners of property binding on said street;* and the same shall be laid with Maryland Granite, provided it can be purchased at as low a price as that furnished by parties outside of the State; and provided the cost of said pavement shall not exceed $2.85 per square yard; the city's portion of the expense to be provided for in the levy of 1879."

This special Ordinance, and the general Ordinance, No. 44 of 1874, therein referred to, were both passed in pursuance of the powers granted by the Act of 1874, ch. 218. That Act made several important changes in the system of laws which had previously existed upon this subject. It gave the Mayor and City Council power, in the first place, to provide by "general Ordinance," for paving or repaving any street, or any part thereof, "without the passage of a special Ordinance in the particular case," whenever the owners of a majority of front feet of property binding on such street, or part thereof, shall apply for the same, upon terms and conditions to be prescribed in such general Ordinance, and for the assessment in any such case, of the cost of such work, in whole or in part, *pro rata* upon all the property binding upon such street or part thereof, and for the collection of such assessments as other city taxes are collected; and, in the second place, it gave them in like terms full power and authority, *without any application of owners*, to provide by special Ordinance for paving or repaving any street, or part of a street, and for assessing the cost of the work, in whole or in part, *pro rata* upon the property binding on such street or part thereof, and for collecting such assessments as other city taxes are collected. The construction of this statute was determined, and its validity sustained, by the decision of this Court in *Burns' Case,* 48 *Md.,* 198. It

was there decided it was not the purpose of this law to
grant power to pass special Ordinances, making improve-
ments of this character for the *public convenience gene-
rally,* without any motive or purpose of special benefit to
property in the immediate locality, and then to assess the
cost of the work upon the owners of such property ; and
as the Ordinance in that case, showed by its preamble,
that in the judgment of the Mayor and City Council, the
improvement was required by, and that their motive in
passing it, was to promote, " *the public convenience,*" it
was declared void, so far as it attempted to enforce special
assessments upon the owners of adjacent property.   But
it was also there held, in accordance with previous adjudi-
cations of this Court, that if no such expression had been
found on the face of the Ordinance, the presumption
would have been that in the judgment of those who passed
it, the paving directed to be done, would be for the benefit
of the particular district, and in that event this presump-
tion would have been conclusive, and the Ordinance free
from objection on that ground.   " The legality," say the
Court in *Hughes' Case,* 1 *G. & J.,* 492, "of levying the
tax, does not depend upon whether the paving does or
does not *in fact* benefit the particular district that is taxed,
but upon the object, the motive of the corporation in
causing the paving to be done.   And in an Ordinance
providing for such paving, and the imposition of such a
special tax, it is not necessary that it should be expressly
stated to be for the benefit of the particular district ; but
if nothing appears to the contrary, such an exercise of
the special taxing power, will be taken to have been in
pursuance of the authority given by the charter.   It will
be presumed that the corporation did not exceed its powers,
but imposed the tax for the purpose only for which the
charter authorizes it to be imposed, and that the paving
appeared to the City Council to be for the benefit of the
particular district."   To the same effect are the decisions

in *Moore & Johnson's Case,* 6 *H. & J.,* 375, and *Howard's Case, Ibid,* 383, where the power of taxing particular districts for local benefits was first considered by the Courts of Maryland. It follows from these decisions, that the question whether the improvement will benefit the particular district, is left to the judgment of the Mayor and City Council, and their determination in the premises is final and conclusive. The law has provided no appeal from that determination, and the Courts have no power to review it at the instance of property owners who are specially taxed. Whether some mode of review ought to be provided, is a matter for the Legislature alone to consider. The Courts, as the law now stands, can determine simply the naked question of power, and as to this, the validity of special assessments, founded upon the theory of special benefits, has been so often and uniformly sustained by the Courts of this and other States, as to be no longer an open question. There is nothing upon the face of the Ordinance now before us, indicating that those who passed it, judged that the improvement was for the public convenience exclusively, and not for the benefit of the particular district. It provides for special assessments, and the presumption is, that they determined that those who were specially assessed would be specially benefited. Its validity therefore cannot be assailed in the Courts, upon the ground that the improvement was in fact for the benefit of the public at large, and conferred no special benefit upon the owners of adjacent property. Such is undoubtedly the general rule, but some Courts have held, and perhaps justly, that a local assessment may so far transcend the limits of equality and reason, that its execution would cease to be a tax, or contribution to a common burden, and become extortion and confiscation. *Cooley on Taxation,* 428, *note* 3. We do not mean to say a case may not arise of such abuse of this power by the legislative body, as to make it "the duty of the Court to protect the citi-

zen from robbery under color of a better name," but it must be a clear case of such abuse, to justify the inter-ference of the Court, and plainly no such case has been made by the present complainants in their bill, nor estab-lished by the proof in this record.

But it is said no notice was given to the property owners of the purpose to enact this Ordinance, nor is any provision made by the Ordinance itself, giving notice of the proceedings under it, and affording those to be affected by it, an opportunity of being heard before the charges are fully established against them; and this, it is argued, is taking their property without due process of law, and in violation of their constitutional rights. It is conceded the Act of Assembly requires no such notice, and, in our opinion, this objection is founded upon a misapprehen-sion of the nature of the power here granted and exer-cised. This is not an Ordinance to open and condemn a street or highway, where private property is taken for public use, by the right of eminent domain, but an Or-dinance imposing a tax or assessment for the repaving of a street already opened and condemned. That the impo-sition of such a tax or assessment, upon the owners of adjacent property, is an exercise of the *taxing power*, and not of the right of eminent domain, has been so fre-quently decided, not only by this Court, but by the Courts of other States, that the controversy which may once have existed upon the subject, must be regarded as closed. *Green-mount Cemetery Case*, 7 *Md.*, 517; *Cooley on Taxation*, 430; 2 *Dillon on Mun. Corp., sec.* 596. What is said by Judge COOLEY on pages 265 and 266, of his valuable book on *Taxation*, as to the importance to persons assessed, that they should have some opportunity to be heard before the charge is fully established against them, has reference to general assessment laws, under which the property of the citizens of the State is assessed or *valued* for the purpose, and as the basis, of taxation generally.

In all the States, and certainly in Maryland, provision has always been made in such laws, for a hearing and for a review of the action of the assessors or valuers, before a board of review and on appeal to the Courts. But when the valuation has been thus settled, the rate and amount to be raised by taxation, as well as the necessity and propriety of the particular tax, are matters left entirely to the discretion of the Legislature. To hold that notice to the tax payers, is essential to the validity of a law imposing a tax upon the basis of such valuation, and that the Courts can intervene and set it aside, and stay the collection of the tax, because no such notice was given or provided, would be as much an anomaly in jurisprudence as in legislation. In this part of his work, the learned author was not considering special assessments, which are but taxes, for local improvements, and the observations there made, do not, in our judgment, apply to such cases. A careful examination of the case of *Stuart vs. Palmer*, 74 *N. Y.*, 183, and the statutes under which that case arose, has convinced us that it is materially different from this. Much of the opinion in that case applies with great force to statutes and proceedings under which property is taken by the right of eminent domain, but we cannot accept what is there said as conclusive of the question of notice now before us in this case. Much more to the point, is the decision of the same Court in the *Matter of Trustees of Pub. School*, 31 *N. Y.*, 574, in which the opinion was delivered by Chief Justice DENIO, where it was held, that raising money for a local improvement, is an exercise of the taxing power inherent in the Legislature; that this power of taxation implies a power to apportion the tax territorially, as the Legislature may see fit, and that the constitutional inhibition against depriving a person of his property without due process of law, and forbidding private property from being taken for public use, without just compensation, has no application to

the case; that in executing the taxing power in such cases, the Legislature provides such agencies and safe-guards against surprise, mistake or injustice, as is thought fit, and while it is manifestly proper that the tax payers should have notice of the imposition proposed to be laid upon them, and an opportunity for making suggestions and explanations to the proper administrative board or officer, yet, as there is no constitutional provision bearing on the subject, it is for the Legislature to determine and prescribe in every case what shall be sufficient. We hold it then to be clear, both upon reason and authority, that provisions for notice, or giving the right of hearing, or an appeal to the Courts and a jury trial, however wise and proper they may be in point of policy, are not *essential* to a valid exercise of this branch of the taxing power. In the present case, no such provisions were required by the Act of Assembly, nor embodied in the Ordinance, and these complainants were left to their right to petition the Mayor and City Council against its passage, if they deemed it prejudicial to their interests, and to such hear-ing before the committee having the matter in charge, as is usually accorded by legislative bodies. If they failed to avail themselves of this privilege, or were unsuccess-ful in their efforts, the Courts cannot interfere, for the *power* to determine when a special assessment shall be made, on what basis it shall be apportioned, over what district it shall extend, and whether the particular im-provement will confer a benefit upon property in the im-mediate locality beyond that which will accrue therefrom to property more remote, or the public generally, is a power confided to the legislative department, to be exer-cised, subject to such provisions, and under such restric-tions only as the law makers may see fit, in each case, to prescribe. With the wisdom or unwisdom of such assess-ments when ordered in cases in which they are admissible at all, the Courts have no concern, unless (according to

some authorities,) there is plainly and manifestly such an abuse of power, as takes the case beyond the just limits of legislative discretion. *Cooley on Taxation*, 429. The record before us discloses no such abuse of power, and this objection to the validity of the Ordinance cannot prevail.

But in executing the Ordinance the City Commissioner proceeded to assess the two-thirds of the cost upon the adjacent property according to *frontage*, and it is contended that this front foot rule was repealed by the Act of 1874, is not contained in, or re-enacted by the Ordinance, and has now no legal existence; and the assessments according to that rule, were, therefore, made without lawful authority. It is conceded, on all sides, to be the province of the Legislature to prescribe, in such cases, how the apportionment shall be made, and this may be either by the *front foot*, by the *area* of the fronting lots, or by their *value*, including or excluding the buildings upon them. Occasional hardships may result from the adoption of either mode, but the authorities are united in the conclusion that either may lawfully be made the basis of apportionment. In street improvements, especially such as paving and repaving, the frontage rule has been very generally adopted as the most practicable and reasonable measure of probable benefits, and, certainly it cannot with propriety be denounced as inherently unreasonable or unjust. In speaking of this rule, Judge COOLEY observes, that "such a measure of apportionment seems at first blush to be perfectly arbitrary, and likely to operate in some cases with great injustice, but it cannot be denied that in the case of some improvements, frontage is a very reasonable measure of benefits, much more just than value would be, and perhaps approaching equality, as nearly as any estimate of benefits made by the judgment of men." *Cooley on Taxation*, 451. In Baltimore the rule has prevailed, been acted upon, and acquiesced in without ques-

tion or complaint, from the foundation of the city to the present time, but not always under an express provision of an Act of the General Assembly to that effect. Prior to the incorporation of the city, taxes were imposed upon the inhabitants of the town, directly by the Legislature, and by the Act of 1782, ch. 17, among other taxes for paving, cleansing, and keeping the streets in repair, a tax of twelve shillings and six pence, was levied "on every front foot of improved and unimproved lots, in those parts of the streets fixed on to be paved, or that may have been already paved by the Special Commissioners." Afterwards, upon representation by the Commissioners that this tax operated unequally and oppressively, because one and the same rate was fixed "*for streets of different widths,*" the Legislature, by the Act of 1791, ch. 59, changed it as desired, and prescribed different rates per front foot, according to the width of the street. When the city was incorporated by the Act of 1796, ch. 68, the system of direct taxation by the Legislature ceased, and power was conferred upon the corporation "to lay and collect taxes not exceeding two dollars in the hundred pounds in any one year," and in the following year, by the Act of 1797, ch. 54, "full power and authority," was given to the corporation "to enact and pass all Ordinances necessary for paving and keeping in repair the streets, lanes and alleys of the city, and to tax any particular part or district of the city for paving the streets, lanes and alleys therein, which may appear for the benefit of such particular part or district." Neither this, nor the preceding Act, made any reference to the front foot rule, but under the broad power contained in the last Act, numerous paving Ordinances were passed, and in all cases, so far as we are aware, this rule of assessment was adopted, and without dissent on the part of the property owners so taxed. The Act of 1817, ch. 148, sec. 18, has been referred to by the appellees' counsel, as prescribing the rule, but that sec-

tion simply provides that no unpaved street shall be paved " without the assent in writing of the proprietors. of a majority of the ground *binding and fronting on* such street or the part thereof to be paved," and if this language is sufficient to prescribe the front foot rule, then similar terms in the Act of 1874 must have the same effect. The Act of 1832, ch. 57, does not, in our judgment, apply to public streets. The Act of 1833, ch. 40, clearly prescribes the rule, but it deals solely with *repaving.* All antecedent laws on the subject were repealed by the adoption of the Local Code in 1860, and in that we find no provision applying the rule to cases of original paving. Sections 845 and 847 of Article 4 are derived from the Act of 1833, and refer only to *repaving.* After the Code, the Act of 1870, ch. 282, (which was repealed by the Act of 1874,) simply declared that the owners of property on the street shall be assessed " their proportional part of the expenses " for the paving or repaving. In short we have found no statute from the incorporation of the city in 1796 to the present, in which with reference to the *paving* of unpaved public streets, this rule has been prescribed in express terms, and if its adoption could be made out by implication, the language of the Act of 1874 is quite as strong for that purpose, as that used in any previous law. It is, however, undeniably true that during this long period this rule has been constantly recognized in paving Ordinances, adopted in practice, accepted by property owners and tax payers without demur, and has stood without objection until the present cases arose. It is also equally true that during the same period many paving tax cases have been brought to this Court and argued by eminent counsel, in which the validity of the taxes has been vigorously assailed on various grounds, and yet this objection is now raised for the first time. These facts may not suffice to establish the legal existence of the rule, but they certainly afford material aid in the

construction of the Ordinance now before us, which will be presently considered.

The argument on the part of the appellees, is to the effect that the Act of 1874, has expressly repealed all previous legislation on the subject, including those sections of the Local Code in which the front foot rule is prescribed, and has substituted its own provisions as the sole and only law relative to the paving and repaving of streets, and as this Act is *silent* as to the rule of assessment in such cases, the result is, either that *no rule* on the subject exists, and the city is left without a paving law which can be executed, or, as the only alternative, the assessments must be made upon the basis of the valuation of property for the purpose of ordinary taxation, fixed and ascertained under and by virtue of the general revenue and assessment laws of the State. But conceding the Act fails to prescribe, in express terms, any rule of assessment, it nevertheless vests the Mayor and City Council with "full power and authority to provide by *Ordinance* for assessing the cost of any such work, in whole or in part, *pro rata* upon the property binding on such street or part thereof." Under this broad and general power, it is very clear, we think, that an Ordinance may be passed adopting the front foot rule as the mode of apportionment, and if so adopted that the rule will be lawfully established. *Howard's Case,* 6 *H. & J.,* 389. And such, in our opinion, upon fair and just construction, is the effect of the special Ordinance in question, and the provisions of the general Ordinance which it refers to and adopts. The special Ordinance not only declares that two-thirds of the cost of the work shall be paid "by the owners of property binding on said street," but it adopts *all* the provisions of general Ordinance No. 44, "so far as the same may be applicable" to the repaving which it directs to be done. Among the provisions of the latter Ordinance, which are unquestionbly so appli-

cable, are sections *eight* and *seventeen.* By section *eight*, which relates to *paving*, the City Commissioner is required to impose a tax upon the owner or owners of property binding upon the street, or part thereof to be paved, *equal in amount* to the whole cost of the work, and he is further directed " to assess and lay the tax upon the *owner* or *owners* of property on each side of said street, of one-half *of so much of said street as may be in front of such property*," and by section *seventeen*, which relates to *repaving*, it is provided that the " same modes of procedure shall be adopted," except that two-thirds only of the cost " shall be paid by the owners of property binding " upon the street, or part thereof to be repaved. By other provisions of both Ordinances the work was required to be done under contract, to be given to the lowest bidder, and at a cost not exceeding a certain sum per square yard, which of necessity made the cost of each and every square yard of pavement or repavement uniform. After the contract was entered into, the ascertainment of the entire cost was merely a matter of measurement and calculation. Now, in view of this consideration, the only reading and interpretation we can give to this *eighth* section, is that it requires each frontage owner to pay one-half the cost, so ascertained, of paving so much of the street as lies in front of his property, and this is nothing more nor less than the front foot or frontage rule. For these reasons, we hold that the frontage rule has a legal existence, and it is, therefore, no objection to the validity of these assessments that they were made according to that rule.

Some minor questions have been discussed which do not require an extended notice. We think it plain the Ordinance authorized assessments only on property fronting on that part of the street which was directed to be repaved, and not on property throughout the entire length of Pratt street. The duties of the City Commissioner are clearly defined and prescribed by the Ordi-

nances.   The ascertainment of the cost of the work, and the apportionment under the rule to the property owners, are, as we have said, matters of measurement and arithmetical calculation, which must of necessity be entrusted to a ministerial agent.   Neither in this, nor in any other respect, do we find any unauthorized delegation of power to this officer.

Finding then no valid objection to these assessments, the *pro forma* decree appealed from must be reversed, and the bill dismissed.   ·

*Decree reversed,*
*and bill dismissed.*

(Decided 17th March, 1881.)


ALVEY and IRVING, J., dissented, and the former filed the following opinion :

By the opinion of a bare majority of the Court in this case, the opinion of the majority in the case of the *City of Baltimore vs. Scharf and others,* 54 *Md.,* 499, has been overruled.   I concurred in the opinion of the Court in *Scharf's Case,* and can perceive no sufficient reason whatever why it should have been overruled or receded from by the Court.   I must therefore dissent from the opinion of the majority of the Court filed in this case.

In that opinion there are three propositions asserted and made the basis of the judgment, which, in my opinion, with all due respect to the opinions of others; cannot be supported in reason or by authority.   These propositions are—

1st.  That the question, whether the property along the line of improvement is really benefited, is left *exclusively* to the judgment of the Mayor and City Council, and that their determination is *final and conclusive,* whether founded in fact or otherwise ; and that the property owners have no right to question, nor the Courts power to inquire into

the facts of the case, and to relieve against any injustice of the special assessments, though they may be made when, *in point of fact,* no benefits will be conferred whatever.

2nd. That because the special assessments upon the property of the complainants were made under the taxing power, as distinguished from the power of eminent domain, therefore no notice of any kind was required to be given to the parties of such assessments; and that it is not essential that the property owners should have an opportunity to be heard, either as to the propriety of the proposed improvement, the manner of its execution, or of the special assessments and collection thereof.

3rd. That the front foot rule of assessment or apportionment of the cost of the improvement, notwithstanding the repeal of those provisions of the law which expressly authorized it, still subsists, and that it was properly applied in this case.

I shall state briefly the reasons of my dissent from each of these propositions.

1. If it be true that the Ordinance, under which the present assessments were made, should be taken as a final judgment, and so preclude all inquiry into the facts upon which it is supposed to be founded, there can be no good reason why all Ordinances of municipal corporations, dependent upon facts for their support, should not be equally conclusive. Whether a particular state of case actually exists, and whether that state of case constitutes a nuisance, or something else falling within the scope of municipal authority, in all such cases the Ordinances passed in reference to them must be taken as conclusive of the facts *that would justify their adoption.* The real state of facts becomes quite immaterial, and the Ordinance is the only thing that can be appealed to to determine the question of fact, and that must be by conclusive presumption if the Ordinance happen to be silent upon the sub-

ject. I must confess that I have not so understood the legal import of mere municipal Ordinances, when passed to affect the private rights of property of the citizen. All municipal authority is derived by delegation only, and the municipal agents must act within the limits of that authority ; and whenever the authority is transcended or abused, or exercised in an unreasonable and therefore an unauthorized manner, the citizen has his remedy for relief against the unwarranted action of the municipality or its agents. This proposition would seem to have the support of all authority entitled to respect.

In the case of *Burns vs. City of Baltimore*, 48 *Md.*, 198, this Court declared Ordinance No. 79, of 1874, passed under the Act of 1874, ch. 218, for regrading, repaving, &c., of Light street, utterly void, so far as it provided for special assessments, merely because it recited in the preamble that *public convenience* required the street to be improved. This was certainly going very far in the way of protection of private right as against the action of the city authorities ; for I suppose there is no case of paving or repaving of the public streets of a city that it is not done primarily and principally with a view to the public convenience,—certainly never with a view to mere private benefit. Indeed, there would be no authority at all for making the improvement except for public purposes. The declaration in the preamble did not say that it was for the public convenience *alone*, that the improvement was authorized to be made. A fair presumption, perhaps, in that case, could have been indulged, that while the public convenience was the primary and leading motive to the passage of the Ordinance, yet, such private benefits and advantages would accrue to the abutting property, as to justify the special assessments attempted to be made. But this Court held, and I am far from saying it did not rightly hold, that the Ordinance was void as to the special assessments, because it was supposed to

be of doubtful construction, and, in such case, the pre-
sumption should be in favor of the right of the citizen.
I am, however, clear in saying, that if the same indulgent
construction had been extended to that Ordinance that
has been extended to the one involved in this case, there
could have been no difficulty in supporting the special
assessments, which were there declared void. A strong
presumption in favor of the rightfulness of the action of
the Mayor and City Council would certainly have saved
the Ordinance in that case.

It is supposed that the cases of the *City of Baltimore vs.*
*Johnson & Moore,* 6 *H. & J.,* 375, *The City vs. Howard,*
*Ib.* 386, and *The City vs. Hughes,* 1 *G. & J.,* 480, afford
warrant for the conclusive effect attributed to the Ordi-
nance in this case. But I do not so read those cases.
Doubtless, Ordinances should be supported by all fair
intendment, and they are certainly *prima facie* evidence
of the facts upon which they profess to be founded. But
in the cases referred to the question was not the same
as that presented in this case. In those cases, the ques-
tion was, whether there was authority given to the corpo-
ration to tax particular parts or districts of the city for
paving streets, in the absence of affirmative proof that
such pavement was specially beneficial to that particular
part or district of the city in which it was made. The
improvements in those cases were required and made for
public use and convenience, and the question was whether
the city at large or the particular districts or parts of the
city in which the streets were located, should bear the tax.
It was not a question of *special benefits* to abutting prop-
erty. The Court held, and it was all that was decided
bearing upon this particular question, that the corpora-
tion could not tax any particular part or district of the
city for paving, unless such paving appeared to be for the
benefit of that particular part or district. But that, in
any Ordinance directing a street to be paved, and impos-

ing a tax on the district for that purposes, it was not
necessary to be stated in the Ordinance that it was for
the benefit of such district; but that it would be so taken,.
if nothing appeared to the contrary.   And the Court
further held, that the paving of streets is *prima facie* for
the benefit of the parts or districts of the city through
which they pass, and more especially when applied for
by a majority of the immediate inhabitants.

That a municipal Ordinance affecting a private right.
of property cannot, in its nature, be so conclusive as to
preclude all inquiry into the facts upon which it professes:
to be founded, would seem to be well established by
express decision of this Court.   In the case of *Glenn vs.*
*City of Baltimore*, 5 *G. & J.*, 424, in passing upon the
question as to how far an Ordinance in respect to a par-
ticular erection, supposed to be a nuisance, was to be taken
as establishing the fact, the Court held, that, while all
fair intendment should be made in favor of the validity
of the Ordinance, yet it was liable to be questioned on
proof.   They said: "It is true the corporation have
power to pass all laws which are necessary or proper to-
carry into effect any given power, and the degree of its
necessity or propriety would not be minutely or critically
scrutinized; but the Court ought to see that it may be
the means of accomplishing the object of the grant.   The
degree of necessity would indeed be properly, perhaps,.
the subject for the judgment of the corporation, but that
it contributes in any degree, would be for the determina-
tion of the Court."   And in the case of *Alexander &*
*Wilson vs. City of Baltimore*, 5 *Gill*, 383, 398, involving
the same principle, and nearly the identical question that
is presented in this case, by the reasoning, and whole
tenor of the opinion of the Court, it was conceded that if
the proper averments had been made in the bill, the ques-
tion as to the fact of special benefits would have been
open to the plaintiffs on the proof; and that, too, in a case

where the judgment of the Mayor and City Council had
been passed, as to the right of exemption of a certain
locality from the special assessments. Indeed, upon no
other principle would there be proper protection of private
property within the limits of municipal corporations.

The principles and right of these special assessments
are just in themselves when properly applied. It is only,
however, when the property assessed receives from the
improvement benefits in addition to those received by the
community at large, that the principle can properly apply.
This, says Judge DILLON, as the result of all the author-
ties, is the true and only solid foundation upon which
local assessments can rest. (2 *Mun. Corp.*, *3rd Ed.*, *sec.*
761.) And this is the precise ground upon which it is
said by this Court that they can be supported, and none
other. *Alexander & Wilson vs. Baltimore, supra.* The
same principle is fully affirmed in *Burns' Case*, 48 *Md.*,
203. The special benefit, therefore, is the essential condi-
tion of the assessment. Without it, there is no power to
make the assessment; and any attempt to enforce an assess-
ment where there is no special benefit conferred is a
wrong, and, if consummated, is nothing more nor less than
the confiscation of private property for public use, with-
out compensation.

Now, it is quite certain, I suppose, that it was not
designed by the Act of 1874, ch. 218, to confer upon the
city an arbitrary power to pass Ordinances requiring the
whole or any part of the cost of the improvement of the
streets, to be assessed upon the property binding thereon,
without respect to any special benefit to such property.
If such was the design of the Act, I should have no hesi-
tation in declaring it void, as transcending legislative
power. That such was not the design of the Act, how-
ever, I suppose to have been decided by the case of Burns,
to which I have referred. Special benefits then must be
in the contemplation of the Ordinance to make it valid, so

far as the special assessments are authorized; and the question then is, whether any such special benefits are to accrue, or whether it be merely an assumption without any foundation whatever in fact. The complainants deny that there will be any special benefits to their property whatever, and allege that the improvement is solely and exclusively for the common benefit of the public generally; and thus bring their application within the principle applied in *Burns' Case.* If, then, the principle, as a limitation upon legislative or municipal power, be worth anything, or has anything of substance in it, as a shield or protection against the invasion of the rights of private property, why not allow these complainants the benefit of it, notwithstanding the mere form of the Ordinance? To refuse their application upon such ground, would seem to be sacrificing that which is valuable and sacred to the merest form—not to say device that may, upon any occasion, be resorted to to make presumable justification for an Ordinance, when it would have none in fact.

In the kindred and closely analagous case of taking private property for public use, by authority of the State, the opinion of the legislature, or of the municipal corporation entrusted with the exercise of the power, is never conclusive upon the question, whether the use be public for which the property is sought to be taken. The Legislature cannot make the use public by simply declaring it so; and while the necessity or expediency of the exercise of the power in all cases rests with the Legislature, either mediately or immediately, the question whether the particular use be of such public nature as will justify the exercise of the power, is purely a judicial one; and no terms can be employed in a statute or an Ordinance sufficiently strong to conclude the question, or to exclude the Courts. No proposition is better established than this, and it has been expressly affirmed by this Court. *N. C. Coal Co. vs. G. C. Coal Co.*, 37 *Md.*,

560 ; 2 *Kent Com.*, 340 ; *Deansville Cemetery Asso.*, 66 *N. Y.*, 569 ; *Ryerson vs. Brown*, 35 *Mich.*, 333 ; *Tyler vs. Beacher*, 44 *Vt.*, 648. Upon no other principle would the constitutional inhibition be of any value or protection to the rights of private property.

Now, I take it to be clear, that, for the same reason that the Courts cannot be concluded upon the question of what is a public use, the Legislature could not arbitrarily, and wholly irrespective of the fact, conclude the question here involved, by simply declaring that special benefits to abutting property would accrue from the particular improvement authorized, whether it be street, railway., turnpike road, or other highway, and therefore direct either the whole or a part of the cost of the improvement to be assessed upon such property, and thus appropriate private property to public use. And if the Legislature could not thus conclude the question, I know of no principle upon which a municipal corporation can do so by Ordinance. To say that either the Legislature or a municipal corporation can so proceed, is at once to break down all limitation or restriction as to the right, and to leave the whole matter entirely at the mercy of those who may be clothed with power to authorize the assessments. And the only answer that can be offered to the objection made to such unlimited power is, that we must not suppose that those entrusted with its exercise will ever abuse it. But that, as we may easily perceive, is no answer at all, for it is simply begging the whole question.

2. The next question is, was notice of the proceedings essential, in order either to bind the property owners personally, or to fix the assessment as a charge upon the property assessed ?

Neither the Act of 1874 nor the Ordinance under which the repaving was authorized to be done, made any provision in regard to notice ; and, in fact, none was given. The Ordinance, passed without notice, at once became a

conclusively binding decree, both *in rem* and *in personam*, according to present contention and decision, from which no appeal or relief can be had, however arbitrary or erroneous it may be. It is to bind not only the property authorized to be assessed, but the owners personally, and by that means all the property that they may own. 6 *H. & J.*, 383 ; 45 *Md.*, 621. And such being the case, the question is, whether such results can be effected by proceedings without warning or notice to those concerned, and yet be by due process of law, or by the law of the land, as those terms are now understood and applied?

Of course, I am not to be understood as maintaining that taxes of any kind can only be assessed and collected by judicial proceeding. On the contrary, all taxes, under our system, are assessed and collected by proceeding *in pais*, and those proceedings are of necessity summary in their nature. But by the term summary, as said by the Supreme Court, in *McMillan vs. Anderson*, 95 *U. S.*, 41, is not meant arbitrary, or unequal, or illegal. The assessment must, under both Federal and State Constitutions, be lawfully made. And in regard to notice, we know of no system of taxation in this country in which the parties affected by the assessments are not allowed, at some stage of the proceeding, an opportunity to be heard. Indeed, upon fundamental principles of right and justice, and as a guaranty of the rights of the citizen against arbitrary exactions, notice is deemed, by the Courts of the highest authority, an essential element in the legality of all assessments, whether of ordinary taxes or for special benefits ; and any mode of assessment by which it has been attempted to deny to the parties affected the right and opportunity to be heard in their defence, has been denounced as essentially vicious, and therefore inoperative and void. Without notice, therefore, no valid assessment can be made. And it is no answer to the objection of the want of notice that no

injustice has been done in the particular case, or that the assessment has been fairly and justly made; for the legality of the Ordinance must be tested, not by what has been done in the particular instance, but by what may be done under its sanction. And for the plain proposition that notice, in all such cases as the present, is essential to the legality of the assessment, I need only refer to the cases of *Overing vs. Foote*, 65 *N. Y.*, 263; *In matter of Trustees of Public Schools*, 31 *N. Y.*, 574; *Stuart vs. Palmer*, 74 *N. Y.*, 183; *Philadelphia vs. Miller*, 49 *Penn St.*, 440; *Butler vs. Saginaw*, 26 *Mich.*, 22; *Thomas vs. Gain*, 35 *Mich.*, 155; *Patten vs. Green*, 13 *Cal.*, 325; and to *Cooley on Taxation*, 265, 266.

Due process of law, say the Supreme Court of the United States, in the case of *Murray vs. Hoboken Land and Improvement Co.*, 18 *How.*, 272, is not confined to judicial proceedings, but extends to all proceedings which may affect the citizen in his rights of liberty or property. "It is manifest," say that Court, "that it was not left to the legislative power to enact any process which might be devised. The Article is a restraint on the legislative as well as on the executive and judicial powers of the government, and cannot be so construed as to leave the Legislature free to make any process 'due process of law,' by its mere will." And in the cases of *McMillan vs. Anderson*, 95 *U. S.*, 37, and *Davison vs. New Orleans*, 96 *U. S.*, 97, the principle that the citizen is entitled to the protection afforded by requiring "due process of law," in imposing assessments upon his property, is fully recognized. But in those cases, the Court held it to be "due process of law," when the statute, under which the assessments were made, gave the parties affected the right to apply to a Court of justice to determine the validity of the assessments;—a privilege not accorded to the parties affected by the Ordinance involved in this case. Supposing therefore notice to be essential to constitute "due

process of law," in cases of assessment like the present, it is quite clear that the requirements of both the State and Federal Constitutions have been wholly disregarded, in making the assessments in question.

In the case of *Thomas vs. Gain*, 35 *Mich.*, 155, the question was as to the validity of an assessment authorized by statute upon lots within a certain district, "in proportion to the number of superficial feet therein," for the making of sewers. No notice to or hearing of the owners of the lots was provided for by the statute, and Judge COOLEY, in delivering the opinion of the Court, declared that the parties whose property was to be taken under summary tax proceedings were entitled, as of right, to be heard at some stage in the proceedings, before the tax could become an established charge against them or their property. He said: "The principle was recognized by this Court in *Butler vs. Supervisors of Saginaw*, 26 *Mich.*, 22. In England, until appeals were given from sewer assessments, it was held that the party taxed might sue the officer in trespass or replevin for a levy on his property, and in that suit might defeat the assessment if he could show that he was not benefited as the Commissioners had adjudged. See *Dove vs. Gray*, 2 *T. R.*, 358; *Masters vs. Scroggs*, 3 *M. & S.*, 447; *Netherton vs. Ward*, 3 *B. & Ald.*, 21; *Stafford vs. Hamston*, 2 *B. & B.*, 691; *Soady vs. Wilson*, 3 *Ad. & El.*, 248; *Emmerson vs. Saltmarsh*, 7 *Id.*, 226; *Board of Works vs. Bridge Co.*, 7 *El. & Bl.*, 964. In this country we do not allow the justice of the assessment to be inquired into in a suit to charge the officers with a personal liability; but it follows legitimately from this that parties taxed must have an opportunity to be heard regularly at some stage in the proceedings. Their rights are not to be concluded by proceedings which are wholly *ex parte.*"

This question was very fully considered by the Court of Appeals of New York, in the case of *Stuart vs. Palmer*,

74 *N. Y.*, 183, and it was there held, that a statute imposing an assessment for local improvement, without providing for notice to the owners of the property to be assessed, and an opportunity for them to be heard, was unconstitutional and void, as not being by "due process of law."

It is said that notice would be of no practical value or protection to the property owners, and hence it was not necessary to be given. But that is no reason whatever, in a legal and constitutional point of view, why they should not have notice, or why they should be denied the right to be heard before their property was actually charged and themselves made personally liable for the amount of the assessment. Such argument, however, has no real foundation either in reason or fact.

The second section of the Act of 1874, ch. 218, manifestly contemplates the exercise of discretion and judgment on the part of the Mayor and City Council, on each particular project of improvement, as to the right and propriety of assessing the cost of such improvement, in whole or in part, *pro rata*, upon the property binding on the street, lane, or alley, designed to be improved. Indeed, upon no other principle could the statute for a moment be sustained. The question, therefore, not only as to the propriety and need of the improvement itself, but the question of the cost, the proportion and mode of assessment—whether the property abutting the improvement would really be *specially* benefited thereby, and to what extent; and whether it would be more just to assess the property according to its value, its area, or its frontage,—were all questions in which the property owners were vitally interested, and in respect to which they should have been heard. And it is only since the passage of the Act of 1874 that this extreme and severe, and as I think dangerous, experiment, of denying the right of the citizen to be heard in these cases, has ever been attempted in the government of the City of Baltimore.

In my judgment the experiment should not be sanctioned by this Court.

3rd. As to the third proposition from which I dissent, I deem it necessary to say but little.

The Legislature, by the express terms of the Act of 1874, ch. 218, repealed secs. 845, 846, 847, 848, 849 and 850, of Article 4 of the Local Code, relating to the repaving and recurbing of streets in the City of Baltimore, and providing for the assessment of a portion of the cost thereof on the abutting property, *in proportion to its front feet.* Why this rule of assessment was entirely repealed, and in no form re-enacted, if it was not intended by the Legislature to get rid of it altogether, it is difficult to conjecture. The Legislature manifestly had a design in the repeal of the rule, and I think it is not difficult to perceive the reason upon which they acted. By the repealing Act of 1874, the system which had previously prevailed up to that time, of only providing for repaving and recurbing the streets upon the application of two-thirds of the property owners along the street proposed to be improved, was abolished. The consent or application of the property owners was, by that Act, dispensed with, in those cases contemplated by the second section of the Act; and with that change it was but reasonable and proper that the arbitrary and unreasonable rule of assessment in proportion to the number of front feet should be abrogated.

What reason or justice is there in imposing the same amount of assessment on a given number of front feet of a lot only ten feet deep, with small or no improvement on it, as upon one two hundred feet deep, with large and valuable improvements thereon? And the same inequality, and consequent injustice, exist in the different localities of lots along the same street. The fundamental principle of taxation, that of equality according to value, is grossly violated in the application of this front foot rule; and it can therefore be no matter of surprise, nor

4

ought it to be of regret, that the Legislature saw reason
for abolishing it altogether.    And this I take to be their
declared meaning in the express repeal of section 845 of
Article 4 of the Local Code.

For the reasons I have stated, I am of opinion that the
decree of the Court below, declaring the assessments void,
ought to be affirmed by this Court.